THE STATE OF IOWA, Appellee, v. JOHN DICKERHOFF, Appellant.

Abduction: ENTICING FEMALE TO HOUSE OF ILL FAME: INDICTMENT.
1  It is usually advisable to charge an offense in the language of the statute, but under our law an indictment charging the enticing of " a virtuous female " to a house of ill fame for immoral purposes, rather than in the language of the statute, is sufficient.

Evidence: SUFFICIENCY. In a prosecution for enticing a virtuous
2  female to a house of ill fame, the evidence is reviewed and held sufficient to support a conviction.

Evidence: ACTS AND DECLARATIONS OF CONSPIRATORS. Where it was
3  the theory of the prosecution that defendant and his wife were jointly concerned in enticing the prosecutrix into their house for immoral purposes, evidence of their acts and declarations in promoting the common purpose, even though both were not present at the time and place referred to, was admissible.

*Appeal from Polk District Court.*— HON. W. H. McHENRY, Judge.

TUESDAY, MAY 2, 1905.

THE defendant, with his wife, Emma Dickerhoff, was indicted upon the charge of enticing a virtuous female to a house of ill fame for the purposes of prostitution and lewdness. Upon trial to a jury he was adjudged guilty, and appeals.— *Affirmed.*

*Joseph D. Laws,* for appellant.

*C. W. Mullan,* Attorney-General, *L. De Graff,* Assistant Attorney-General, and *Jesse Miller,* County Attorney, for the State.

WEAVER, J.— I. It is the appellant's first contention that the indictment upon which he was tried is fatally defective. The statute under which the indictment was re-

1. ENTICING FE-
MALE TO
HOUSE OF ILL-
FAME: indict-
ment.

turned (Code, section 4942) provides that: "If any person inveigle or entice any female, before reputed virtuous, to a house of ill fame . . . for the purposes of prostitution or lewdness, . . . he shall be imprisoned in the penitentiary not more than ten nor less than three years." The indictment does not follow in precise terms the language of the statute, but charges that at the time and place mentioned the said defendant John Dickerhoff "one Anna Tallman, a virtuous female then and there being, did willfully, unlawfully, and feloniously inveigle and entice to a house of ill fame for the purposes of prostitution and lewdness." The objection raised is that the words "a virtuous female" in the indictment are not the equivalent of the statutory expression "a female before reputed virtuous." While it is proper, and usually advisable, that the charge of an indictable offense be made in the very words of the statute, the failure so to do will not render the indictment invalid if the words actually employed have a like meaning, force, and effect. *State v. Waite,* 101 Iowa, 377; *State v. Martin,* 125 Iowa, 715. It is the law of this

State that a charge of crime shall be made in ordinary and concise language with such certainty and in such manner as to enable a person of common understanding to know what is intended. Code, section 5289. It is also the law that no indictment shall be held insufficient because of any matter which was formerly deemed a defect or imperfection which does not tend to prejudice the substantial rights of the defendant upon the merits. Code, section 5290.

The statute here in question was enacted for the preservation of society from the demoralizing arts of the procurer, and for that purpose it extends its protection not only to the virtuous woman, but to her also who is reputed to be virtuous. In other words, the offender against this law shall not be permitted to escape punishment by showing that his victim may have been guilty of some indiscretion in the past; and if it be true that she bears a reputation for virtue and purity of character he cannot entice her into a brothel for immoral purposes without incurring the penalty which the law imposes upon such act. The Legislature certainly did not intend that a person employed in the business of promoting prostitution could inveigle or entice a virtuous woman or girl into a house of infamy for immoral purposes, and then be heard to say in his defense that in the mouth of common gossip her prior reputation for virtue had been the subject of unfavorable comment or inference. Upon the theory of the appellant the statute affords no protection to a virtuous female if in fact she be not so reputed. With this view we cannot agree. Counsel suggests no theory upon which it can be said that the slight variation complained of between the words of the statute and those used in the indictment could mislead the defendant, or in any manner tend "to prejudice his substantial rights." It would require the exercise of extraordinary ingenuity to find any ground for complaint in this respect. We think, therefore, that the indictment charges the offense with sufficient certainty and particularity, and the objections made thereto cannot prevail.

II.  The appellant also challenges the sufficiency of the evidence to sustain the verdict.  The record does not bear out his claim in this respect.  It is shown beyond doubt

2. EVIDENCE: sufficiency.  that the appellant and his wife, while ostensibly engaged in keeping a restaurant, were the proprietors of a house of ill fame, resorted to by prostitutes, who divided with them the wages of harlotry.  While thus engaged, the appellant went to the house of the prosecuting witness in the country, and engaged her and her sister to come to his place in Des Moines, promising to give one of them employment in the restaurant and the other in service not definitely stated.  Reaching the city the same evening, he left them with his wife, who gave them their supper, after which another woman inmate of the place took them to the theater.  Returning from the theater, a company of men gathered at appellant's house.  One of them soon retired to another room with the woman last mentioned, and Mrs. Dickerhoff suggested to the sister of the complaining witness that she "entertain one of the young men."  This proposal was rejected, and both the girls at once left the house.  It should also be said that some time prior to appellant's appearance at the home of the complaining witness his wife had also been there, and offered the witness employment in the city.  The testimony on part of the defendant consists of the bare assertion that he employed one of the girls to work in his restaurant, and the other came also, but without any agreement of employment.  He attempted no denial that he was keeping a house of ill fame.

In the prosecution of offenses of the character here charged it is seldom, if ever, that direct and positive evidence to substantiate all the elements of the alleged crime is obtainable.  Deceit and secrecy surround the conduct of the actors therein, and the State is compelled to rely very largely upon the proof of circumstances from which the conclusion of guilt may properly be drawn.  When the combination of circumstances thus shown is such as to establish the in-

ference of guilt beyond a reasonable doubt, a conviction based thereon should not be interfered with because the evidence is circumstantial, rather than direct. No one can read the record in this case without being thoroughly and abidingly satisfied of the truth of the charge made against the appellant, and the objection to the sufficiency of the evidence must be overruled.

III.    Exception is taken to the ruling of the trial court in permitting testimony concerning conversations between the appellant's wife and the complaining witness and her sister.

3. EVIDENCE: acts and declarations of conspirators. It is the theory of the State that defendant and his wife were jointly engaged in the scheme to get these girls into their house for immoral purposes, and that theory has strong support in the record. It was therefore entirely proper to introduce evidence of their acts done and words spoken in promotion of the common unlawful purpose, even though both were not present at the time and place referred to. This is elementary, and requires no argument or citation of authorities. The court properly instructed the jury as to the law governing this feature of the State's case.

Other alleged errors are suggested by counsel, but upon careful consideration of all the points thus presented we are satisfied that the record does not support the propositions relied upon.

We find nothing upon which to justify a reversal of the judgment of the district court, and it is therefore *affirmed*.