THE STATE OF IOWA, Appellee, v. JOHN BROWNLEE, Appellant.

1. **Practice in Supreme Court**: CHALLENGE TO JUROR. An alleged error of the district court in overruling a challenge of a juror for cause will not be reviewed by the supreme court where the record fails to show that the juror in question either sat in the case or that the peremptory challenges of the complaining party had previously been exhausted.

2. **Criminal Law**: ACCOMPLICES: EVIDENCE. Where, in pursuance of a preconceived plan for the purpose of obtaining evidence against the defendant, certain persons concealed themselves in a barn during a conversation between the defendant and his accomplice in the crime proposed to be committed, *held*, that the testimony of such persons as to what was said in such conversation did not require corroboration upon the ground that they were accomplices with the defendant.

3. **Indictment**: ADMISSIONS: DEMURRER. It is not competent for the state for the purposes of a demurrer to an indictment to add to or explain such indictment by the contents of a paper forming no part of it.

4. **Threats**: WORDS SPOKEN TO THIRD PERSON: CONSTRUCTION OF STATUTE. Threatening words indicating an intention to do bodily harm to a third person if he refuses to do an act specified, but which it is not intended by the speaker shall be communicated to such person, do not constitute an offense within the meaning of section 3871 of the Code.

*Appeal from Warren District Court.*—HON. J. H. HENDERSON, Judge.

MONDAY, FEBRUARY 1, 1892.

THE defendant was indicted for maliciously threatening to shoot and kill one O. P. Wright, with the intent thereby to procure the signature of said Wright, against his will, to certain promissory notes aggregating seventeen thousand dollars. He was convicted, and sentenced to be confined in the state penitentiary for the term of eighteen months. From this judgment he appeals.—*Reversed.*

*L. Kinkead,* for appellant.

*John Y. Stone,* Attorney General, *Thomas A. Cheshire* and *G. W. Crozier,* County Attorney, for the State.

KINNE, J.—The material and undisputed facts in this case, as disclosed in testimony, are as follows: That the defendant, believing that he had a grievance of a financial nature against one O. P. Wright, conceived the plan of obtaining remuneration and satisfaction for the wrongs he claimed to have suffered by compelling Wright to sign promissory notes which he (Brownlee) had prepared, aggregating the sum of seventeen thousand dollars, and payable to himself. To accomplish this purpose he sought the aid of one Frank Duncan, and had several interviews with him. Duncan appeared to enter into the plans of the defendant and to encourage him, although, after the first interview between him and the defendant, he (Duncan) informed Wright of the defendant's plans and purposes, as described to him, and thereafter acted with Wright's knowledge and consent. The defendant and Duncan had meetings at night in a barn, and in the hearing of several persons who were there concealed in a haymow. These listeners came there at the instance of Duncan and Wright to hear what passed between the defendant and Duncan. The defendant was not aware of the presence of these persons, and supposed that he was alone with Duncan. In the conversation had at the place and under the circumstances above stated it was agreed that Duncan should take Wright to a certain place on the next Monday evening, and that the defendant should there meet them and attempt to secure the signature of Wright to the notes. In reply to the question, "Suppose Mr. Wright goes out there and refuses to sign these notes, then what will you do?" The defendant answered: "It is just this way, if he

don't sign the notes I will kill him anyway." One witness testifies that the defendant said to Duncan that "he would make the God-damned puppy sign them notes or else he would kill him." On the next morning the defendant was at the place agreed upon, armed with a revolver, the notes ready for signature, and pen and ink. Duncan did not have Wright at the place appointed, but went there and represented to the defendant that Wright would be there. The defendant then proposed to conceal himself, and, when Wright came, to step out and make him sign the notes, saying: "I will kill him if he don't sign the notes. It is life or death with me." Wright did not come, but the sheriff appeared, by previous arrangement, and arrested the defendant; and when so arrested the notes, ready for signature, pen and ink and revolver were found on his person—also another loaded revolver in his buggy. It appears that the defendant admonished Duncan to keep all that was said a profound secret. Duncan was to receive five hundred dollars for his share in the transaction.

I. A juror was challenged for cause, on the ground that he showed on his *voir dire* that he had formed an opinion as to the defendant's guilt, and was related by marriage to the person threatened. The appellant claims that the court erred in overruling the challenge. As it is not shown that the juror sat in the case, or that the defendant had exhausted his peremptory challenges, it is unnecessary for us to pass upon the question presented. If the juror did not sit, and defendant had not exhausted his peremptory challenges, the ruling of the court was, at most, error without prejudice. *State v. Davis,* 41 Iowa, 311; *State v. Elliott,* 45 Iowa, 486. In support of the ruling of the lower court we are required to presume that the juror did not sit on the case, and that the defendant did not exhaust his peremptory challenges,

1. Practice in supreme court: challenge to juror.

II. The appellant contends that the parties who were secreted in the barn, and who testified in this case,

**2. CRIMINAL law: accomplices: evidence.**

corroborating Duncan, were accomplices, and that the court erred in not so instructing the jury. The court instructed the jury that Duncan was an accomplice, and properly told them that he must be corroborated. If it were true that these witnesses were accomplices, then their testimony could not be regarded as corroborating the accomplice Duncan. But they were not accomplices. They were merely parties to a plan, and assisted in its execution, to secure evidence against the defendant, by entrapping him before he had met Wright, as he had intended to do.

III. That part of the indictment charging the offense is in the following language: "The said John

**3. INDICTMENT: admissions: demurrer.**

Brownlee, on the eighteenth day of May, in the year of our Lord one thousand, eight hundred and ninety, in the county of Warren, aforesaid, did unlawfully, willfully, maliciously and feloniously, for the purpose of procuring the signature of one O. P. Wright to certain promissory notes payable to the said John Brownlee, and amounting in the aggregate to the sum of about seventeen thousand dollars, and against the will of O. P. Wright, verbally threaten to shoot and kill the said O. P. Wright unless he, the said O. P. Wright, would sign said promissory notes, and deliver the same to the said John Brownlee, contrary to and in violation of law." To this indictment the defendant demurred, assigning several grounds, but we shall only consider the ground argued. Those not argued we shall treat as waived.

The county attorney, on behalf of the state, and prior to the submission of the demurrrer, filed a writing in the case conceding that the threats charged in the indictment were not made to or in the presence of the said O. P. Wright; and it was agreed by the parties

that said written concession should be made and filed
and for the purposes of said demurrer considered in
connection therewith. Thus the parties, for the pur-
pose of the demurrer, sought to add to or explain the
indictment by the contents of a paper which formed no
part of it, and which is not provided for by law. We
do not think that this should be permitted.

It is insisted that the indictment is bad, in that it
fails to charge that the alleged threats were made to or
in the presence of O. P. Wright. The indictment on
its face seems to us to charge with sufficient certainty
that the threats were made to Wright, and hence it was
not open to the objection made by the defendant.
Holding, as we do, that the "concession" was improp-
erly filed, we cannot consider it.

IV. The statute under which this indictment is
found is in these words: "If any person, either ver-
bally or by any written or printed com-
munication, maliciously threaten to accuse
another of a crime or offense, or to do any
injury to the person or property of another, with intent
thereby to extort any money or pecuniary advantage
whatever, or to compel the person so threatened to do
any act against his will, he shall be punished by impris-
onment in the penitentiary not more than two years or
by a fine not exceeding five hundred dollars." Code,
sec. 3871. The defendant claims that it is an essential
element of the crime that the threats be made to or in
the presence of the person against whom they are
directed. It is clear that in this case the threats were
not made to or in presence of Wright, and it is cer-
tain it was understood that they should not be com-
municated to him, and that the defendant, until after
his arrest, had no knowledge that they had been so
communicated. This question is raised by the defend-
ant on exceptions to instructions given by the court, on
exceptions to instructions asked by him and refused,

*4. THREATS: words spoken to third person: construction of statute.*

and on exceptions taken to the action of the court in overruling his motion for a new trial and in arrest of judgment.

A "threat" is said to be "any menace of such a nature and extent as to unsettle the mind of the person on whom it operates, and to take away from his acts that free, voluntary action which alone constitutes consent." Abbott's Law Dictionary, title, "Threat." Another definition is, "to hold up as a terror the expectation of evil; to alarm with the promise of evil; to menace." Webster's Dictionary. It may be conceded that a threat, whether it be verbal, written or printed, to be within the statute, need not be made personally to the one threatened. In order to be a "threat," it must be so made, and under such circumstances as to operate, to some extent at least, on the mind of the one whom it is expected to influence. If it does not do this, how can it be said to take away the voluntary character of his acts? It was not necessary that the statute should say, in terms, that the threat must be communicated in any way to the party threatened. The meaning of the word used, "threat," implies that it is a menace of some kind, which in some manner comes to the knowledge of the one sought to be affected thereby. It may be made in person to the object of it, or it may be brought to his knowledge by written communication, or in any other manner. We are required to construe words and phrases according to the context and the approved use of language. Code, sec. 49.

It may be claimed that threats made to one person against a third person may be intended to so operate on the mind of the one they are communicated to as to induce him to influence the third person to do some act against his will. If such a case should be conceded to be within the intention and language of the statute, still, under the evidence here, the defendant could not be convicted. It is not nor could it be successfully claimed from the testimony that the threats were

intended to be communicated, nor that by them the defendant either intended or expected to influence Duncan so that he would compel Wright to act against his will. Construed most unfavorably to the defendant, the so-called "threats" were mere declarations of what the defendant proposed to do in case Wright refused to sign the notes. They were, so to speak, threats to threaten. They were mere statements to Duncan as to the manner in which the defendant proposed to carry out his plans. There is nothing in the record to indicate that Duncan could have been or was moved to try to induce Wright to sign the notes by the threats made, nor that the defendant had any such belief. To constitute the statutory crime the defendant must have maliciously threatened to do an injury to the person of Wright, "with intent thereby" to compel him to sign the notes against his will. It is clear that the necessary ingredient of intent to commit the statutory crime is lacking.

For the errors pointed out the case is REVERSED.