101 377
104 107
105 526

101 377
110 634

101 377
127 405

## STATE OF IOWA v. E. F. WAITE, Appellant.

OFFENSE CHARGED. Any crime or offense which may be prosecuted within the territorial limits of the state, including those condemned by the United States statutes, is within the contemplation of the Iowa statutes condemning the offense of maliciously accusing another of a crime or offense, with intent to compel him to do an act against his will.

Blackmail. The guilt or innocence of the person threatened is not involved in determining defendant's guilt under the Iowa statute condemning the offense of maliciously threatening to accuse another of a crime or offense with intent thereby to compel him to do an act against his will, though evidence tending to establish the guilt of the person is sometimes admissible as bearing on the motive with which the threat is made.

INDICTMENT. A substitution of the words "in order to compel" for the statutory words "with intent to thereby compel" in an indictment for accusing another of a crime in order to compel him to do an act against his will, does not invalidate the indictment, as the phrases are substantially equivalent.

SAME. An indictment which charges that defendant did "threaten verbally to accuse one A, then and there being," etc., and describes the threat, and its purpose to compel A to make an affidavit against his will, clearly indicates for whom the threat was intended, and that it was in the hearing of A.

EVIDENCE: *Jury question.* Evidence that defendant, charged with threatening to accuse another of a crime in order to compel him to do an act against his will, denounced the prosecutor and his wife, in their own home, as liars and perjurers, with only a suspicion of guilt on which to base a charge, is sufficient evidence of malice, for the consideration of the jury.

*Identification.* Letters offered by a party are properly excluded where they have not been identified in any way so as to make them relevant.

Penal State Laws: FEDERAL OFFICERS. An officer of the United States government may be detained in a state and prosecuted under its statutes, for the commission of a felony not within the scope of his employment, though connected therewith. Citing— *U. S. v. Kirby,* 7 Wall. 482; *Etheridge v. Sperry,* 137 U. S. 266; distinguishing *In re. Nagle,* 135 U. S. 1.

*Appeal from Howard District Court.*—HON. A. N. HOB-
SON, Judge.

WEDNESDAY, April 7, 1897.

THE defendant is charged with threatening to accuse another of a crime in order to compel him to do an act against his will. From judgment of conviction, imposing a fine of two hundred and fifty dollars, the defendant appeals.—*Affirmed.*

*Cato Sells* and *Frank Sayre* for appellant.

*Milton Remley,* attorney general, for the state.

LADD, J.—The defendant at the time of the alleged offense was a clerk in the pension department of the United States, detailed as special examiner. As such, he was directed to investigate the application of one D. P. Andrus for an increase of pension. The latter had made an affidavit, before an examiner named Perham, declaring three letters, purporting to have been written by himself to his wife during the Civil War, genuine. It is claimed by the state that defendant, in order to compel Andrus so to do against his will, threatened him that, unless he made affidavit saying the one before Perham was false, he (defendant) would accuse and prosecute him for the crime of perjury.

I. It is insisted the indictment is defective, in that the intent with which the threat was made, and against whom made, is not alleged. The statute provides that if any person, verbally, maliciously threaten to accuse another of a crime or offense, with intent thereby to compel the person so threatened to do an act against his will, he shall be punished by imprisonment in the penitentiary or by

fine. The words "in order to compel" are used in the indictment, instead of "with intent thereby to compel," as in the statute. The expressions are of similar import, and alike signify the purpose with which an act is done. The language of the statute need not be followed but words equivalent in meaning may be employed.

II. That the indictment should state against whom the threat is directed cannot be doubted. *State v. Brownlee,* 84 Iowa, 473 (51 N. W. Rep. 25); *Kessler v. State,* 50 Ind. 229. In this case it is charged that the defendant did maliciously "threaten verbally to accuse one D. P. Andrus, then and there being," and describes the threat and its purpose, to compel Andrus to make the affidavit against his will. This clearly indicates for whom the threat was intended and that it was within the hearing of Andrus.

III. The statute, it is said, contemplates only such crimes and offenses as are defined by the laws of Iowa. So narrow a construction cannot be adopted. The people are under the same obligations of obedience to the statutes of the United States as to those of this state, and a crime is none the less such because defined by an act of congress rather than of the legislature. Any crime or offense which may be prosecuted within the territorial limits of the state is undoubtedly intended.

IV. The defendant urges that as he was an officer of the United States, performing his duty as such, his acts cannot be made the subject of inquiry by the state courts. He claims to have been detailed by the commissioner of pensions to examine claims made under and by virtue of the pension laws, and to aid in the prosecution of any person violating the same, and that he went to his [Andrus'] house, pursuant to instructions from the pension office, "to talk with Mr

Andrus about some letters which had been filed in the pension office in support of his pension case." So, the defendant had not been directed to procure the affidavit, or to do so in the manner alleged. Nor do the laws of congress permit the pension department to resort to duress and intimidation for the purpose of obtaining information. The officers of the general government owe obedience to the laws of this state, when within its limits, and may be detained and prosecuted for the commission of felonies thereunder. *U. S. v. Kirby,* 7 Wallace, 482. Also, as bearing hereon, see *Etheridge v. Sperry,* 139 U. S. 266 (11 Sup. Ct. Rep. 565.) The defendant relies on *In re Neagle,* 135 U. S. 1 (10 Sup. Ct. Rep. 658). In that case, Neagle was discharged because it appeared that he killed Terry in pursuance of a law requiring him to protect Justice Field while traveling through his circuit in the discharge of his official duties and the act was necessary for that purpose. The defendant, if he committed the offense charged, was not, in doing so, acting within the scope of his employment.

V. The defendant, as part of the cross-examination of Andrus, offered in evidence three letters, purporting to have been written by him to his wife, in 1864, and complains of the ruling of the court in excluding them. The letters, at the time offered, had not been identified in any way and, until shown to be the letters referred to in the affidavit, were not admissible.

VI. Much is said in argument, of the failure of the state to establish want of probable cause from which malice might be inferred. The guilt of the person threatened was not involved in determining the defendant's guilt. Wharton, Cr. Law (10th Ed.), section 1664. But evidence tending to establish the guilt of the person threatened is sometimes admissible, as bearing on the motive with

which the threat was made. *Commonwealth v. Jones,* 121 Mass. 57; *State v. Goodwin,* 37 La. Ann. 713; *Mann v. State,* 47 Ohio St. 556 (26 N. E. Rep. 226). There was no evidence introduced tending to prove Andrus' guilt of the crime for which prosecution is claimed to have been threatened, and the question of probable cause is not involved in the case. But there is evidence of malice on the part of the defendant. Andrus' account of the transaction is as follows: "Mr. Waite wanted me to make an affidavit that I had not written those letters home, and I would not do it. He claimed, the paper on which they were written was not made until after the war. He did not deny the handwriting, but he denied their being written from the place where they were dated. He said, that if I did not file an affidavit to the effect that the letters were fraudulent, and that I did not write them home from the service, he would have me arrested, fined, and imprisoned, and he would attend to it personally. When Mr. Waite made those accusations, he first commenced, in a very pleading tone, trying to get me to say that I did not write them home. We went into the house. I introduced him to my wife. He put me under oath, and we talked about pension matters. My wife mentioned other letters. He wanted to see them. She would not get them, telling him that the others were rejected. He told me to have my wife get those letters, and I would not do it. He said for us to go into the other room and talk the matter over, and come out and tell the truth; that we had both been lying about the letters; that we had sworn to lies, both here before him, and others; that our former affidavits were false; he was in the government's employ; he hated to call a man a liar in his own house, but he had to do it. He seemed quite angry. He struck his fist on the table, and said he would have the affidavit." This testimony

is fully corroborated by his wife. It seems hardly necessary to say that, if the jury believed the defendant used the language attributed to him by these witnesses, they were warranted in finding that he was actuated by malice. To denounce these people in their own home as liars and perjurers, with only a suspicion of guilt on which to base the charge, was an outrage that would justify no other conclusion. Fairness requires the statement, however, that the defendant denies having made the threats alleged or charges claimed, and that many circumstances surrounding the transaction indicate only proper motives on his part. He had been in the government employment many years and bore a good reputation. That a different conclusion might have been reached will not warrant us in disturbing the verdict.

VII. The instructions present the law, as applicable to the case, correctly. Some of the criticisms are covered by what has been said. The others require no attention. The judgment must be AFFIRMED.