## UNITED STATES v. MUSGRAVE.

(District Court, E. D. Arkansas, E. D.    April 1, 1908.)

No. 493.

1. POST OFFICE—MAILS—POWER OF CONGRESS.

U. S. Const. art. 1, § 8, authorizing Congress to establish post offices and post roads, authorizes all measures necessary to secure the safe and speedy transmission of the mails and a prompt delivery of their contents, and also grants power to prescribe what shall be carried and what shall be excluded.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Post Office, § 1.]

2. WORDS AND PHRASES—"PUBLIC POLICY."

The "public policy" of the government is not limited to such matters as are universally considered as injurious to the public interests, but any acts reasonably tending to have that effect may be prohibited by statute, and thereupon they are against public policy.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5813–5814; vol. 8, p. 7773.]

3. STATUTES—UNAMBIGUOUS STATUTES—JUDICIAL DUTY.

Where a statute is clear and unambiguous, a court is bound to enforce it as it is.

4. POST OFFICE—MAILS—OBSCENE MATTER—STATUTE CONSTRUED.

Rev. St. § 3893, as amended by Act Sept. 26, 1888, c. 1039, § 2, 25 Stat. 496 (U. S. Comp. St. 1901, p. 2658), forbidding the mailing of obscene, lewd, or lascivious books, etc., prohibits the use of the mails to all persons for the transmission of matters which are lewd, lascivious, or indecent, regardless of the relationship between sender and addressee—e. g., husband and wife—and regardless of the effect of the receipt of the article sent may have on the mind of the particular addressee.. If it is of such nature that the reading would, in the opinion of reasonable persons, or the jurors selected to try one charged with violating the section, tend to deprave or corrupt the morals of reasonable persons, and would suggest to the minds of either sex thoughts of an impure or libidinous character, it is within the prohibition of the statute.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Post Office, § 50.

Nonmailable matter, see note to Timmons v. United States, 30 C. C. A. 79.]

Powell Clayton, Asst. U. S. Atty.
U. S. Bratton, for defendant.

TRIEBER, District Judge.  The defendant is charged in the indictment with violation of section 3893, Rev. St., as amended by the act of September 26, 1888, c. 1039, § 2, 25 Stat. 496 (U. S. Comp. St. 1901, p. 2658), for sending through the mails an obscene, lewd, and lascivious letter which was addressed to his wife.  The demurrer raises the question whether such a letter sent by a man to his wife constitutes a violation of this statute.  The contention on behalf of the defendant is that in view of the construction placed upon this statute by the Supreme Court in Swearingen v.. United States, 161 U. S. 446, 451, 16 Sup. Ct. 562, 40 L. Ed. 765, where the court held that "the offense aimed at in that portion of the statute we are now considering was the use of the mails to circulate or deliver matter to corrupt the morals of the people.  The words 'obscene,' 'lewd,' and 'lascivious,' as used

in the statute, signify that form of immorality which has relation to sexual impurity, and have the same meaning as is given them at common law in prosecutions for obscene libel," Congress could not have intended to include husband and wife, as at common law they were one; and for the further reason that no action or criminal prosecution would lie for a libel of the wife by the husband. There is high authority for the latter proposition. Regina v. Lord Mayor, 16 Q. B. D. 772; State v. Edens, 95 N. C. 693, 59 Am. Rep. 294. But does the language used in the Swearingen Case apply to the entire act, or was it intended to apply only to the one part of the act then under consideration, which was to ascertain the intent of Congress in the use of the words "every obscene, lewd, and lascivious book   *   *   *   or other publication of an indecent character"? A careful reading of the opinion will show that the only question before the court was the latter, as appears from the quotation above. This also applies to numerous other cases in which the same conclusions were reached (Dunlop v. United States, 165 U. S. 486, 17 Sup. Ct. 375, 41 L. Ed. 799; United States v. Clarke [D. C.] 38 Fed. 732; United States v. Harmon [D. C.] 45 Fed. 414; United States v. Martin [D. C.] 50 Fed. 918; United States v. Moore [D. C.] 129 Fed. 159; Burton v. United States, 142 Fed. 57, 73 C. C. A. 243), in none of which was there any other question involved than what constitutes such literature as is prohibited by the statute. For this reason these cases are not authorities on the issue involved herein.

In the case at bar it is necessary to construe the entire act in order to determine the question raised by the demurrer. It is well settled that the power vested in Congress to establish post offices and post roads authorizes all measures necessary to secure the safe and speedy transmission of the mails and a prompt delivery of its contents, as well as the power to prescribe what should be carried and what should be excluded. Ex parte Jackson, 96 U. S. 727, 732, 24 L. Ed. 877; In re Rapier, 143 U. S. 110, 134, 12 Sup. Ct. 374, 36 L. Ed. 93. In the last-cited case the court said:

"When the power to establish post offices and post roads was surrendered to the Congress it was as a complete power, and the grant carried with it the right to exercise all the powers which made that power effective. It is not necessary that Congress should have the power to deal with crime or immorality within the states in order to maintain that it possesses the power to forbid the use of the mails in aid of the perpetration of crime or immorality. The argument that there is a distinction between mala prohibita and mala in se, and that Congress might forbid the use of the mails in promotion of such acts as are universally regarded as mala in se, including all such crimes as murder, arson, burglary, etc., and the offense of circulating obscene books and papers, but cannot do so in respect of other matters which it might regard as criminal or immoral, but which it has no power itself to prohibit, involves a concession which is fatal to the contention of the petitioners, since it would be for Congress to determine what are within and what without the rule; but we think there is no room for such a distinction here, and that it must be left to Congress in the exercise of a sound discretion, to determine in what manner it will exercise the power it undoubtedly possesses."

To the same effect are Enterprise Savings Association v. Zumstein, 67 Fed. 1000, 15 C. C. A. 153, and Weeber v. United States (C. C.)

62 Fed. 740, decided by Mr. Justice Brewer and concurred in by Circuit Judges Caldwell and Sanborn. These authorities conclusively determine that Congress in enacting legislation of this sort, is not attempting to act under any pretended police power, but under the powers granted by section 8 of article 1 of the Constitution "to establish post offices and post roads." If the use of the mails is a privilege which may be granted or withheld by Congress, Congress has the power to determine what shall be carried and what excluded. In the exercise of that power it has excluded explosives, liquids of various kinds, insect pests, except for scientific purposes, packages weighing over four pounds and many other articles. In determining that question Congress does not act for the protection of the rights of individuals merely; this has been wisely left to the states by the national Constitution. But under the powers to regulate the mails, it has seen proper to declare that they shall not be used for any purposes which are detrimental to the morals of the people or against public policy, and, by enacting that the sending of obscene matter through the mails shall not be permissible, it has determined such acts to be against public policy. The public policy of the government is not limited to such matters as are universally considered as injurious to the public interests, but any acts reasonably calculated to have that effect may be prohibited by statute, and thereupon they are against public policy. United States v. Freight Association, 166 U. S. 290, 340, 17 Sup. Ct. 540, 41 L. Ed. 1007; Logan & Bryan v. Postal Tel. Co. (C. C.) 157 Fed. 570, 587.

In the Freight Association Case the court, speaking by Mr. Justice Peckham, said on that subject:

"The public policy of the government is to be found in its statutes, or when they have not yet spoken, then in the decisions of the courts and the constant practice of the government officials; but when the lawmaking power speaks upon a particular subject over which it has constitutional power to legislate, public policy in such a case is what the statute enacts."

The authorities as to what was the intent of Congress in enacting this legislation are quite numerous and practically uniform. In Ex parte Jackson, supra, it was held:

"In excluding various articles from the mails, the object of Congress has not been to interfere with the freedom of the press, or with any other rights of the people; but to refuse the facilities for the distribution of matter deemed injurious to the public morals. * * * All that Congress meant by this act was that the mail should not be used to transport such corrupting publications and articles, and that any one who attempted to use it for that purpose shall be punished. The same inhibition has been extended to circulars concerning lotteries—institutions which are supposed to have a demoralizing influence upon the people."

In United States v. Chase, 135 U. S. 255, 261, 10 Sup. Ct. 756, 758, 34 L. Ed. 117, the court, in stating the intent of Congress in enacting this statute, said:

"We think that its purpose was to purge the mails of obscene and indecent matter as far as was consistent with the rights reserved to the people, and with a due regard to the security of private correspondence from examination."

In Timmons v. United States, 85 Fed. 204, 30 C. C. A. 74, the court said:

"Having regard to the evil to be suppressed, and looking to the whole of the section, the intention was to render nonmailable every obscene, lewd, or lascivious book, pamphlet, picture, paper, letter, writing, print, or other publication of an indecent character as being similar to those specifically named, and like those in being obscene, lewd, or lascivious in character. Such we think is the proper construction."

In De Gignac v. United States, 113 Fed. 197, 52 C. C. A. 71, it was contended that the indictment drawn under this statute was subject to the rule of pleading applicable to indictments for slander, libel. etc.; that it is strictly analogous to an indictment for criminal libel. But in overruling this contention the court held that:

"The primary object of this statute is to protect the mails from corrupt communications. The incidental purpose of the law is to protect the public morals."

A petition for certiorari to review this case was denied by the Supreme Court. 186 U. S. 482, 22 Sup. Ct. 941, 46 L. Ed. 1266. In United States v. Behout (D. C.) 28 Fed. 522, 524, it was held:

"The statute does not make the publication of obscene and indecent matter an offense. It consists in using the United States mail for its circulation."

In United States v. Smith (D. C.) 45 Fed. 476, Judge Jenkins said:

"The purpose of the statute was to purge the mails. Congress, possessing the power of exclusion, declines to permit the mail to become a vehicle for transmission or circulation of mental filth."

That the letter charged in the indictment to have been transmitted by the defendant through the mail is within the prohibition of the statute is not denied. As originally enacted, the act did not include letters. Act June 8, 1872, c. 335, § 148, 17 Stat. 302, and Act March 3, 1873, c. 258, § 2, 17 Stat. 599. Nor did the amendment of July 12, 1876, include them. Act July 12, 1876, c. 186, 19 Stat. 90; section 3893, Rev. St. (2d Ed.) 1878 (U. S. Comp. St. 1901, p. 2658). It is the amendatory act of September 26, 1888, c. 1039, § 2, 25 Stat. 496 (U. S. Comp. St. 1901, p. 2658), which first included letters. The language of the statute is clear and free from ambiguities; it makes no exceptions in favor of any persons. The language used is "any person who shall knowingly deposit," etc. There is no exception in favor of husband and wife. In construing statutes, the well-established rule is, where the language of the statute is clear and free from ambiguity, the duty of the court is to enforce it as it is, as there is nothing to construe. Thornley v. United States, 113 U. S. 310, 5 Sup. Ct. 491, 28 L. Ed. 499; Scotts v. Reid, 10 Pet. 524, 527, 9 L. Ed. 519; Bate Refrigerating Co. v. Sulzberger, 157 U. S. 1, 15 Sup. Ct. 508, 39 L. Ed. 601.

In Hamilton v. Rathbone, 175 U. S. 414, 419, 20 Sup. Ct. 157, 44 L. Ed. 221, it was held:

"The rule is perfectly well settled that where a statute is of doubtful meaning and susceptible upon its face of two constructions, the court must look into prior and contemporaneous acts, the reasons which induced the act in question, the mischiefs intended to be remedied, the extraneous circumstances and the

purposes intended to be accomplished by it to determine its proper construction. But where the act is clear upon its face, and when, standing alone, it is fairly susceptible of but one construction, that construction must be given to it."

In Collins v. New Hampshire, 171 U. S. 30, 34, 18 Sup. Ct. 768, 34 L. Ed. 60, the court said:

"In whatever language a statute may be framed, its purpose must be determined by its natural and reasonable effect."

In Scotts v. Reid the court said:

"Where the language of the act is explicit there is great danger in departing from the words used to give an effect to the law which may be supposed to have been designed by the Legislature. * * * It is not for the court to say that where the language of the statute is clear that it should be so construed as to embrace cases, because no good reason can be assigned why they are excluded from the provisions."

In United States v. Chase, supra, the court in construing this statute before it was amended by the act of September 26, 1888, said:

"Another argument on which indictments of this character have been sustained by some of the circuit courts is that a reasonable construction must be given the statute, and, it being evident that Congress intended to exclude anything of an obscene character from the mails, it is immaterial whether the thing prohibited is inside or outside of an envelope, and therefore unreasonable to hold that Congress intended not to allow a decent writing in an obscene envelope, but at the same time to allow obscene writing in a proper envelope. We recognize the value of the rule of construing statutes with reference to the evil they were designed to suppress as an important aid in ascertaining the meaning of language in them which is ambiguous and equally susceptible of conflicting constructions. But this court has repeatedly held that this rule does not apply to instances which are not embraced in the language employed in the statute, or implied from a fair interpretation of its context, even though they may involve the same mischief which the statute was designed to suppress."

To sustain the contention of defendant would necessarily require the court to insert in the act an exception which Congress has failed to make. It would necessitate in almost every case a determination of the moral or mental condition of the addressee of every obscene matter sent through the mails, and, as stated by the assistant district attorney, "the jury would have to determine in every case whether the mind of the receiver of the letter could be corrupted, and an acquittal would result if the addressee were a woman of the town, were insane, were so high minded as not to be influenced by letters of this character, were of such immature years as not to understand the import of the words, were so depraved that he could sink no lower." A prostitute's mind, or that of a degenerate, may not be open to any immoral influences, and the receipt of a lascivious or lewd letter, book or picture may not corrupt their minds because they are beyond such influences. Would that fact be a defense to a prosecution under this statute? Would the fact that a person, while away from home, purchases a lascivious book or picture, and sends it through the mails addressed to himself at his home, exempt him from prosecution under the statute? Clearly not. Or if publishers of such literature should use the mails for the purpose of sending it to retail dealers, who may have no intention of reading it, and whose minds for this reason could

not be corrupted, but merely sell it, could it be successfully claimed that such acts would not be violative of the statute? Congress has prohibited the sending of lottery tickets through the mails. Can a husband send such a ticket to his wife through the mails and still not be amenable to the law, or send to his wife an article intended for the purpose of preventing conception or procuring an abortion, which is prohibited by the same act? In the opinion of this court the language used clearly and convincingly shows that the intent of Congress was to prevent the abuse of a great privilege granted by a magnanimous government for the purpose of promoting the welfare and intelligence of its people, and not permit it to become a "vehicle for the transmission or circulation of mental filth."

It is true the language used in some of the cases cited, if read without reference to the issues before the court, would justify the conclusion that the sole question to be determined under this statute is the effect the matter sent through the mail would have on the mind of the addressee. Thus Judge Thayer, in his charge to the jury in United States v. Clarke (D. C.) 38 Fed. 733, used the following language:

"I desire to say that I have no doubt that under the statute under which this indictment is framed, standard medical works (and by that I mean works that are studied and consulted by physicians and are kept in medical and public libraries) may lawfully be sent through the mail to persons who buy or call for them for the purpose of seeking information on the subjects of which they treat. * * * Furthermore, gentlemen, I have no doubt that persons may lawfully communicate through the mails with their physicians by describing symptoms of their physical ailments, habits and practices, and asking professional advice in relation thereto; and I have no doubt that in response to such inquiries a physician may lawfully advise a patient through the mails with respect to the subject-matter of such communications."

But by reference to the very beginning of the charge it will be seen that the learned judge stated that "the sole question that remains for you to consider and determine is whether the pamphlet and papers are obscene, lewd, and lascivious." It thus clearly appears that what was intended by the courts in the cases cited by counsel for the defendant was merely the definition of the words "obscene, lewd, and lascivious, or publications of an indecent character" and not the construction of the entire act, or the question now before the court.

That it was the intention of Congress to prohibit the use of the mails to all lewd and lascivious matters relating to the sexes is also shown by the fact that the same act prohibits the use of the mails to "notice of any kind giving information, directly or indirectly, where or how, or of whom, or by what means any of the hereinbefore mentioned matters, articles, or things may be obtained or made," etc. Such information alone cannot corrupt the mind of any one, still as it may lead to the purchase of the prohibited articles, Congress, in its wisdom, has prohibited the use of the mails for such communications. That the sole object of the act was not for the purpose of preventing the corruption of the minds of those to whom the letters or papers are sent and who are susceptible to such corruption is fully shown by the fact that it has been the uniform rule of the courts that communications of that nature addressed to government officials who, suspecting that the defendants are engaged in sending obscene literature through the mails,

sought information from them under assumed names, by the use of what is commonly called "decoy letters" are violations of this statute. Grimm v. United States, 156 U. S. 604, 15 Sup. Ct. 470, 39 L. Ed. 550; Goode v. United States, 159 U. S. 663, 16 Sup. Ct. 136, 40 L. Ed. 297; Rosen v. United States, 161 U. S. 29, 16 Sup. Ct. 434, 480, 40 L. Ed. 606; Andrews v. United States, 162 U. S. 420, 16 Sup. Ct. 798, 40 L. Ed. 1023; and Shepard v. United States, 160 Fed. 584. It was urged in those cases that the letters having been mailed to fictitious persons in response to decoy letters there could be no offense, but these contentions were overruled, although it could hardly be claimed that the effect of such information, or even the obscene books or pictures, would have had any effect on the mind of the recipient, the government official, or arouse thoughts of an impure or libidinous character. Judge Thayer, who presided at the trial in the District Court in the Grimm Case (D. C.) 50 Fed. 528, 530, which was affirmed in Grimm v. United States, supra, in passing upon that question said:

"The next inquiry is whether the act complained of—that is to say, the deposit of nonmailable letters in the mail—loses its criminal character because the letters were sent to a person in the service of the post office department in response to an inquiry made by that person under an assumed name, and for the purpose of detecting the defendant in the commission of a crime. This question must be decided in the light of authority, and without reference to the other question that has sometimes been discussed, whether a person is ever justified in resorting to artifice or deception for the purpose of discovering crime. In view of what seems to be the weight of authority at the present time, the court is compelled to decide the question last stated in the negative. If a letter gives information where obscene books or pictures can be obtained, it is an offense to deposit such a letter in the mail with intent to give such information, and thereby to aid in the sale and distribution of such books and pictures, even though the party addressed happens to be an official in the service of the government. And, if such act is done voluntarily and intentionally—that is to say, if the nonmailable letter is deposited in the mail by the accused without solicitation on the part of the officer that the mail be used to convey such intelligence—the weight of judicial opinion seems to be that the act does not lose its criminal character, though the offense may have been committed in responding to an inquiry from a person in the government service which was made under an assumed name for the purpose of concealing his identity."

Applying these rules, it clearly appears that the object of Congress in enacting the statute was to absolutely prohibit the use of the mails to all persons for the transmission of matters which are lewd, lascivious, or indecent. It matters not what the relationship between sender and sendee is, or what the effect of the receipt of the article sent may have on the mind of the particular person to whom it is sent. If it is of such a nature that the reading would, in the opinion of reasonable persons, or the jurors selected to try the case, have a tendency to deprave or corrupt the minds of reasonable persons and would suggest to the minds of either sex thoughts of an impure or libidinous character, it is within the prohibition of the statute. In the language of Judge Phillips in United States v. Harmon (D. C.) 45 Fed. 417:

"Laws of this character are made for society in the aggregate and not in particular. So, while there may be individuals and societies of men and women of peculiar notions or idiosyncrasies, whose moral sense would neither be depraved nor offended by the publication now under consideration, yet the exceptional sensibility, or want of sensibility, of such cannot be allowed as

a standard by which its obscenity or indecency is to be tested. Rather is the test, what is the judgment of the aggregate sense of the community reached by it?"

If a man desires to provide his wife with such literature he must use other means than the mails to transmit it. The millions spent by the government annually on the post office establishment, in excess of the revenue derived therefrom, are not intended for the promotion of immorality or the gratification of depraved tastes, and he who thus uses the mails is, under the statute, guilty of an offense.

In United States v. Wroblenski (D. C.) 118 Fed. 495, it was said that a distinction may be drawn between letters sent to a young person or a stranger, and to a member of the family, upon the ground that the same test is not applicable to publications and sealed private letters. But who is to draw that distinction? In the opinion of this court it is for Congress to do it and not the courts. As long as there is nothing in the act itself justifying this distinction, courts have no right to supply it. For this reason, I am unable to follow that case.

The demurrer to the indictment is overruled.