## UNITED STATES v. STICKRATH.

### (District Court, S. D. Ohio, E. D. June 22, 1917.)

### No. 932.

1. CRIMINAL LAW ☞4—POWER TO DEFINE CRIME—THREATS TO KILL PRESIDENT OF UNITED STATES—STATUTORY PROVISIONS.

The act of threatening to kill or inflict bodily harm upon the President was rightly denounced as a crime, as was done by Act Feb. 14, 1917.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3.]

2. HOMICIDE ☞92—THREATS TO KILL PRESIDENT—LANGUAGE OF THREAT—"SHOULD"—"OUGHT"—"HAD."

A statement by defendant that the President ought to be killed, that it was a wonder some one had not done it, and that if he had an opportunity he would do it himself, constituted an offense under Act Feb. 14, 1917, denouncing the offense of threatening to take the life of the President, as "ought" denotes an obligation of duty, and is a stronger word than "should," which implies merely an obligation of propriety or expediency, or a moral obligation, while the word "had" in the conditional clause was not an auxiliary, but a principal verb, and related, not to the present, but to the future, and the thought expressed was that, if the speaker should have an opportunity, he would do it himself.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 121.

For other definitions, see Words and Phrases, First and Second Series, Had; Ought; Should.]

3. HOMICIDE ☞92—THREATS TO KILL PRESIDENT—ELEMENTS OF OFFENSE—"KNOWINGLY"—"WILLFULLY."

Under Act Feb. 14, 1917, denouncing the offense of knowingly and willfully making any threat to take the life of the President, the words "knowingly"" and "willfully" signify that the offender must have known what he was doing, and with such knowledge proceeded in violation of law, as "knowingly" means with knowledge, while "willfully" means in a willful manner, obstinately, by design, or with a certain purpose: but, when the unlawful threat is knowingly and willfully made, the offense is completed, though the threat is not executed, and though the bad intent with which it was made is subsequently abandoned.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 121.

For other definitions, see Words and Phrases, First and Second Series, Knowingly; Willful—Willfully.]

4. HOMICIDE ☞92—THREATS TO KILL PRESIDENT—ELEMENTS OF OFFENSE.

Under Act Feb. 14, 1917, the motive which prompts a threat against the President's life is immaterial, nor is it material that the threat is sanctioned by what some person or class of persons may conceive to be a correct national policy, or may adopt as a political faith, or designate as a religion.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 121.]

5. HOMICIDE ☞92—THREATS TO KILL PRESIDENT—ELEMENTS OF OFFENSE.

Under Act Feb. 14, 1917, a threat against the president's life need not be made to him personally or in his presence, nor communicated to him, nor need it be of such a nature and extent as to disturb or unsettle his

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

mind to any degree, or take away from him in any measure his free, voluntary action.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 121.]

6. HOMICIDE ⬿140—THREATS TO KILL PRESIDENT—INDICTMENT.

An indictment for threatening to kill or inflict bodily harm upon the President, in violation of Act Feb. 14, 1917, need not state in whose presence the threat was made.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 236.]

7. INDICTMENT AND INFORMATION ⬿110(17)—LANGUAGE OF STATUTE—THREATS TO KILL.

An indictment charging that defendant unlawfully, knowingly, and willfully made a threat against the President, to wit, a threat to take his life, or to inflict bodily harm upon him, such threat being uttered and spoken by defendant in words and substance as therein set out, was sufficient, since it is generally sufficient to charge a statutory offense in the substantial words of the statute, and the indictment apprised defendant with all reasonable certainty of the nature of the accusation, and enabled him to prepare his defense, and to plead any judgment rendered against him as a bar to any subsequent prosecution.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 291–294.]

Pemberton W. Stickrath was indicted for an offense. On demurrer to an indictment. Demurrer overruled.

Stuart R. Bolin, U. S. Dist. Atty., of Columbus, Ohio.
Timothy S. Hogan, of Columbus, Ohio, for defendant.

SATER, District Judge. On February 14, 1917, Congress enacted a law which provides that:

"Any person who knowingly and willfully deposits or causes to be deposited for conveyance in the mail or for delivery from any post office or by any letter carrier any letter, paper, writing, print, missive, or document containing any threat to take the life of or to inflict bodily harm upon the President of the United States, or who knowingly and willfully otherwise makes any such threat against the President, shall upon conviction be fined not exceeding $1,000 or imprisoned not exceeding five years, or both."

The indictment charges that the defendant on April 6th—

"did unlawfully, knowingly, and willfully make a threat against the President of the United States, to wit, a threat to take the life of or to inflict bodily harm upon the said the President of the United States, said threat being then and there uttered and spoken by the said Pemberton W. Stickrath in words and substance as follows, to wit: 'President Wilson ought to be killed. It is a wonder some one has not done it already. If I had an opportunity, I would do it myself'—contrary to the form of the statute," etc.

The sufficiency of the indictment is challenged by demurrer on the following grounds: (1) The person or persons to whom the threat was made are not named; (2) the threat was not communicated to the President; (3) the language employed by the defendant and set forth in the indictment does not amount to a threat; (4) the offense charged is not sufficiently described.

[1] The act is expressed in plain and unambiguous terms, and it must therefore be held that the Congress meant what it plainly expressed. If there is any room left for its construction, such construc-

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

tion must be with reference to the history and situation of the country, to ascertain the reason, as well as the meaning, of its provisions. Preston v. Browder, 1 Wheat. 115, 120, 121, 4 L. Ed. 50. In this country sovereignty resides in the people, not in the President, who is merely their chosen representative. To threaten to kill him or to inflict upon him bodily harm stimulates opposition to national policies, however wise, even in the most critical times, incites the hostile and evil-minded to take the President's life, adds to the expense of his safeguarding, is an affront to all loyal and right-thinking persons, inflames their minds, provokes resentment, disorder, and violence, is akin to treason, and is rightly denounced as a crime against the people as the sovereign power. The statute in question was enacted, not only for the protection of the President as the representative and chosen chief executive of the nation, but also to preserve the tranquility of the people and their peace of mind. Its passage came at a time when this country was about to be driven into and to engage in an epoch-making and substantially worldwide war, participation in which it had earnestly sought to avoid. It was then known that there were some who, on account of erratic tendencies, or mistaken views, or want of sympathy with or even loyalty to our country, were unfriendly to its aims and might, by direction or indirection, or both, endeavor to embarrass and cripple it in the great struggle upon which it was about to be forced to enter, and might by threats assail the President, and thereby inspire others to attempt his life, if they themselves should not undertake the commission of that crime. The enactment was opportune, not only on account of our past record of three presidential assassinations and the peculiar stress to which the country was about to be subjected, but that there might hereafter be a deterrent to restrain the disloyal, erratic, misguided, or wickedly disposed. In so far as diligent inquiry has disclosed, the statute under consideration is as unique as it is forceful. There are laws in many of the states against threats to extort money, to gain property or some other advantage, or to compel a person to act against his will but no enactment of a similar nature by the English Parliament, by Congress, or by the Legislature of any of the states has been found. The nearest approach to it is shown in the margin, and is found in article 1442, Vernon's Cr. St. 1916 (Texas Penal Code).[1]

[2] The language in which the threat set forth in the indictment is couched is sufficient to send the case to trial, if the indictment is otherwise sufficient. The mildest construction that can be put on the first of the quoted sentences is that "President Wilson should be killed." But "ought" is a stronger word than its frequently used synonym "should." "Should" may imply merely an obligation of propriety or expediency, or a moral obligation; but "ought" denotes an obligation of duty. Webster's Dict.; State v. Blaine, 45 Mont. 482, 124 Pac. 516. Indeed, the word "ought" may be used in the mandatory sense of

---

[1] Article 1442: "If any person shall threaten to take the life of any human being, or to inflict upon any human being any serious bodily injury, he shall be punished by a fine of not less than one hundred nor more than two thousand dollars, and, in addition thereto, he may be imprisoned in the county jail not exceeding one year."

"must." Jackson v. State, 32 Tex. Cr. R. 192, 22 S. W. 831. The language of the averred threat imports a surprise that the duty which should be performed by some one had not been done. The word "had" in the conditional clause of the last of the quoted sentences is not an auxiliary, but a principal, verb, and relates, not to the past, but to the future. If the defendant had wished to convey the thought that the killing of the President was past fulfillment, his language would have been "If I had had an opportunity, I would have done it myself." "Had" is the equivalent of "should have," and the thought expressed is, "If I should have an opportunity, I would do it myself." It is expressive of expectation and intention of fulfillment, but less vividly so than if it had been said, "If I shall have an opportunity, I will do it myself."

[3] It is the threat which is "knowingly and willfully" made that is condemned by the statute. "Knowingly" means "with knowledge." West v. Wright, 98 Ind. 335, 339. "Willfully" is defined by Webster to mean: "In a willful manner; obstinately; by design; with a set purpose." Doing a thing knowingly and willfully implies, not only a knowledge of the thing, but a determination with a bad intent to do it. Felton v. U. S., 96 U. S. 699, 702, 24 L. Ed. 875; Potter v. U. S., 155 U. S. 438, 446, 15 Sup. Ct. 144, 39 L. Ed. 214. The words "knowingly and willfully" are used in the statute in substantially the same sense as in section 201 of the Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1127 [Comp. St. 1916, § 10371]), which makes it a penal offense to obstruct or retard the passage of the mail, and the interpretation given them in U. S. v. Claypool (D. C.) 14 Fed. 127, 128, is applicable. As used in the statute and indictment, they are intended to signify that the defendant, at the time of making the threat charged against him, must have known what he was doing, and, with such knowledge, proceeded in violation of law to make it. They are used in contradistinction to "ignorantly" and "unintentionally." The offense denounced by the statute is completed at the instant the unlawful threat is knowingly and willfully made.. It is not the execution of such threat, or (as claimed by defendant) a continuing intent to execute it, that constitutes the offense, but the making of it knowingly and willfully. If it be thus made, the subsequent abandonment of the bad intent with which it was made does not obliterate the crime. The probabilities that there will be at once set in motion the evil consequences resulting to the public from its promulgation (aside from those attendant on its actual execution) are vastly greater than the probabilities that the threat will be carried out.

[4, 5] There are statutes, such as sections 135, 136, and 140 of the Criminal Code (Comp. St. 1916, §§ 10305, 10306, 10310), which are directed against force or threats unlawfully employed or made against any member of a given numerous class. Section 145, relating to threats of informing or of withholding information for the purpose of extorting money, has its counterpart in many state statutes. The statute under consideration, however, runs against the commission of the specific act of threatening to kill or to injure, not any member of the public at large, or any member of a numerous class, but a single per-

son—the incumbent of the presidential office, whoever he may be at any given time. It contains no reference to the purposes for which a threat may be made. The motive which prompts its utterance is immaterial. The prohibited crime is not the less odious because it is sanctioned by what some person or class of persons may conceive to be a correct national policy, or adopt as a political faith, or designate as a religion. Davis v. Beason, 133 U. S. 333, 345, 10 Sup. Ct. 299, 33 L. Ed. 637; Knowles v. U. S., 170 Fed. 409, 411, 95 C. C. A. 579 (C. C. A. 8).

The situation in these respects is like that which arises from violations of section 211 of the Penal Code (Comp. St. 1916, § 10381). The person who knowingly deposits or causes to be deposited in the mail any obscene, lewd, lascivious, or other nonmailable matter is, by that section, guilty of an offense, whether in so doing he is actuated by malice or by a desire to correct a depraving habit and to improve the morals of those practicing it. U. S. v. Harmon (D. C.) 45 Fed. 414. The mailing of such matter is prohibited, regardless of the relationship of the sender and the addressee, and regardless, also, of the effect that the receipt of the article sent may have on the mind of the particular addressee. U. S. v. Musgrave (D. C.) 160 Fed. 700. The use of decoy letters by government officials in ferreting out crimes against the postal law is sanctioned by the highest authority. Grimm v. U. S., 156 U. S. 604, 610, 611, 15 Sup. Ct. 470, 39 L. Ed. 550; Goode v. U. S., 159 U. S. 663, 16 Sup. Ct. 136, 40 L. Ed. 297; Rosen v. U. S., 161 U. S. 29, 42, 16 Sup. Ct. 434, 480, 40 L. Ed. 606. That the nonmailable matter sent in response to a decoy letter does not arouse impure and libidinous thoughts in or produce any effect on the mind of the recipient constitutes no defense. U. S. v. Musgrave (D. C.) 160 Fed. 706.

If the defendant knowingly and willfully threatened to take the life of the President, the motive by which he was actuated will constitute no defense; nor is it necessary that the threat, even if communicated to the President, should have been of such a nature and extent as to disturb or unsettle his mind to any degree, or to take away from his acts in any measure that free, voluntary action which alone constitutes consent. The definitions of "threat" which are pressed upon the court's attention, some of which are found in 38 Cyc. 290, 28 Am. & Eng. Ency. Law, 141, State v. Benedict, 11 Vt. 236, 34 Am. Dec. 688, and State v. Brownlee, 84 Iowa, 473, 478, 51 N. W. 25, are not pertinent or helpful in determining either the interpretation or force of the statute or the sufficiency of the indictment. It is not to be presumed that the President, or any courageous successor to the presidential chair, will be disturbed, or intimidated, or deterred from action, by threats of the character mentioned, even if they be communicated to him. Considering the magnitude of the country and his remoteness in point of distance from the great majority of its inhabitants, to require as a prerequisite to conviction the communication to him of such threats, would operate to defeat almost entirely the purpose of the law, although but an inconsiderable number of persons are so deficient in correct thinking, morals, or patriotism as to be ca-

pable of such unlawful utterances. That the President should be required to travel as a witness to and from places at which offenders, real or alleged, may be tried, or that it should be necessary that government employés and law-observing citizens should inform him of threats made against him, and thereafter present themselves in court to testify to such fact of communication, was not in the legislative mind when the statute was enacted.

[6] Nor was it necessary that the threat should have been made to him personally or in his presence (38 Cyc. 295; State v. Brownlee, 84 Iowa, 473, 51 N. W. 25), or that the indictment should state in whose presence the threat was made, as will appear from an examination of the forms which have successfully passed the scrutiny of the courts. See 18 Ency. Forms, Pl. & Pr. p. 279 et seq., and notes.

[7] The indictment follows closely the language of the statute creating the offense. The offense is purely statutory. Under. such circumstances, it is, as a general rule, sufficient for the indictment to charge the defendant with acts coming fairly within the statutory description, in the substantial words of the statute, without any further expansion of the matter. U. S. v. Simmons, 96 U. S. 360, 24 L. Ed. 819; Pounds v. U. S., 171 U. S. 35, 18 Sup. Ct. 729, 43 L. Ed. 62; Byrne, Fed. Cr. Proc. § 146; McFain v. State, 41 Tex. 385; Longley v. State, 43 Tex. 490, 492, 493. The indictment apprises the accused, with all reasonable certainty, of the nature of the accusation against him, and he is thereby enabled to prepare his defense, and will be able to plead any judgment that may be rendered against him as a bar to any subsequent prosecution for the same offense. It is sufficient in form and substance.

Naftzger v. U. S., 200 Fed. 494, 118 C. C. A. 598, on which the defendant relies, was, I think, correctly decided, but it is not pertinent. It will be conceded that the rule would be different, were an offense charged under the first clause of the statute. In that event it would not be sufficient to charge the offense in the statutory words alone. The letter, or an adequate statement of its contents, would have to be set out. Tynes v. State, 17 Tex. App. 123.

The demurrer is overruled.