[S. F. No. 19181.   In Bank.   Sept. 23, 1955.]

CALIFORNIA MUTUAL WATER COMPANIES ASSO-
CIATION et al., Petitioners, v. PUBLIC UTILITIES
COMMISSION OF THE STATE OF CALIFORNIA,
Respondent; SOUTHERN CALIFORNIA EDISON
COMPANY, Real Party in Interest.

Clayson, Stark & Rothrock and Donald D. Stark for Petitioners.

Everett C. McKeage, Roderick B. Cassidy and J. Thomason Phelps for Respondent.

Bruce Renwick, Gail C. Larkin and Rollin E. Woodbury for Real Party in Interest.

SHENK, J.—This is a proceeding pursuant to section 1756 of the Public Utilities Code to review portions of an order of the Public Utilities Commission affecting the rates of the Southern California Edison Company for the sale and distribution of its electrical energy. (Decision No. 50449, 53 Cal. P.U.C. 385.)

The petitioner California Mutual Water Companies Association is an unincorporated association of mutual water companies. The other petitioners are 18 duly incorporated mutual water companies engaged in pumping and delivering irrigation water to their shareholders and members at cost, and one irrigation district. The mutual water companies and the irrigation district are consumers of electrical energy from Edison's system. These petitioners had been receiving and paying for electrical energy under a schedule applicable to irrigation pumping facilities only, and designated by Edison as Schedule PAP-2. Under this schedule each was entitled to a conjunctive billing feature which permitted a single facility to receive electrical energy at several metering points but to pay for the total energy consumed as if received through a single meter. As electrical energy was billed at a rate which diminished as consumption increased, a decreased overall rate resulted to those entitled to conjunctive billing.

Edison applied for a general rate increase and proposed, as applicable to consumers in the position of petitioners, that Schedule PAP-2 be replaced by a schedule designated as

PA-3, which differed in some respects from PAP-2, but continued the conjunctive billing feature. Edison further proposed that at the end of five years after its effective date Schedule PA-3 would terminate and be replaced by other schedules applicable generally to agricultural consumers and not containing the conjunctive billing feature. By its application Edison sought an increase of approximately $16,000,000 in its annual income. That sum was claimed to be necessary for a fair return on its investment and to maintain its operations. The rate change from PAP-2 to PA-3 was calculated, according to Edison's computations, to produce a proportionate share of increased income when the new rate was to go into effect.

The decision of the commission in general reduced the overall increase requested by Edison but adopted for the most part the form of schedules proposed by Edison. It provided for an increased annual revenue in the amount of $9,835,000 which would be realized at the time the new schedules should become effective. Among the changes found justified was that from Schedule PAP-2 to Schedule PA-3. However, Schedule PA-3 differs from that proposed by Edison in that it ''will expire on October 1, 1956,'' two years after its effective date instead of continuing for five years after its effective date as contemplated by Edison.

The petitioners assert that the commission acted beyond its power on the record before it in authorizing the termination of Schedule PA-3 at the end of two years or at any time in the future. They claim that at the termination of Schedule PA-3 Edison will realize an increased revenue from consumers now entitled to conjunctive billing in addition to the increase authorized by the commission to become effective upon the substitution of Schedule PA-3 for Schedule PAP-2, and that there is no showing before or finding by the commission that such an increase at that time is justified as required by section 454 of the Public Utilities Code. ▮ That section provides as follows: ''No public utility shall raise any rate or so alter any classification, contract, practice, or rule as to result in any increase in any rate except upon a showing before the commission and a finding by the commission that such increase is justified.'' It is not disputed that in the absence of a showing and finding referred to in the foregoing section the Public Utilities Commission is without power to authorize an increase in rates. It is argued that Edison has already increased its rates by the whole amount to which it was found

justified, and any further increase now or in 1956 lacks the necessary finding of justification.

Without question there is evidence in the record to show that the conjunctive billing feature was inaugurated some 20 years ago to meet the economic needs of the time; that today it is unfair and discriminatory as to consumers not entitled to such billing privileges, and that by its application Edison sought in effect to completely eliminate the feature from its schedules over a five-year period. Section 532 of the Public Utilities Code provides in part: "... no public utility shall ... extend to any corporation or person any form of contract or agreement or any rule or regulation or any facility or privilege except such as are regularly and uniformly extended to all corporations and persons. ..." (See also Pub. Util. Code, § 453.) Thus it appears that the commission might properly have determined on the record before it that the termination of the conjunctive billing feature would be justified. The question is whether such a determination was in fact made. The commission and Edison contend that the commission's findings contemplate and justify the termination and the resulting increase in revenue in 1956, although no finding is made as to the specific amount of increase in annual revenue which might accrue to Edison at that time.

There is support in the record for the commission's and Edison's contention. It appears in the views expressed in the opinion and decision of the commission that changes in conditions made it undesirable that the conjunctive billing feature be continued; that the five-year transitory period contemplated by Edison was "longer than necessary" to eliminate the conjunctive billing feature and that "the approximate two-year transitory period should give ample time for the irrigation consumers to revise their budgets and arrange for rewiring so as to consolidate delivery points for single metering where practicable." New schedules adopted by the commission eliminated the conjunctive billing feature as of October 1, 1954, as to new consumers who might otherwise be entitled thereto. The commission sought to justify the shorter transitory period on the ground that it was authorizing a smaller immediate increase in revenue than Edison might otherwise be entitled to. The commission's order authorized Edison to revise its "tariff schedules with rate changes and conditions" as set forth by the commission. The termination of the conjunctive billing feature must be deemed one such condition.

■ The petitioners recognize that the commission found that increases which became effective on October 1, 1954, were justified, but the substance of their contention is that findings of justification extend only to the amount of the increased revenue which Edison would immediately realize. The statute, on the other hand, contemplates a justification of "rates" and ".classifications." It provides that public utilities shall not so raise any "rate" or alter any "classification . . . as to result in any increase in any rate" without first a showing and finding of justification. Thus the changes in rates and classifications which took place on October 1, 1954, were found to be justified by the commission. On October 1, 1956, Edison will not, pursuant to the order of the commission, change its rates or alter its classifications to result in any increased rate. The alteration in classification which will result in possible increased revenue in 1956 was made in 1954. The statute does not require that an independent finding of justification of increased future revenue be made, but only that the commission make a finding of justification for the alteration in classification which, in the present case, eventually may result in some increased revenue.

■ By any interpretation of the decision of the commission it is reasonable to conclude that it has justified the termination of Schedule PA-3 with the result which may take place in 1956. This is evident both by direct reference to the circumstance which the commission deemed to justify present alterations designed to eliminate the conjunctive billing feature within a two-year period, and by general findings of justification of all new schedules and rates whether or not an immediate effect on revenue would be felt.

The commission and Edison raise here a procedural point relating to the power of this court to review the order of the commission. It appears that the decision was issued on August 17, 1954, to be effective in 20 days, which would be on September 6, 1954. Section 1731 of the Public Utilities Code provides in part as follows: "No cause of action arising out of any order or decision of the commission shall accrue in any court to any corporation or person unless the corporation or person has made, before the effective date of the order or decision, application to the commission for a rehearing." The petition for rehearing in the present case has stamped upon its face a notation to the effect that it was filed on September 7, 1954. It is argued that no cause of action therefore accrued to the petitioners and that this court lacks

jurisdiction to review the order, citing *Clemmons* v. *Railroad Com.*, 173 Cal. 254, 258 [159 P. 713] and *Pacific Tel. & Tel. Co.* v. *Eshleman,* 166 Cal. 640, 652 [137 P. 1119, Ann.Cas. 1915C 822, 50 L.R.A.N.S. 652].

The petitioners assert that section 1731 does not require that the petition for rehearing be "filed" before the effective date, but only that it be "made" before that date; that documents relative to hearings before the commission may be served by mail (Pub. Util. Code, § 1704); that in such cases "the service is complete at the time of the deposit" in the United States Post Office (Code Civ. Proc., § 1013); that in the present case the certificate of service was executed pursuant to the commission's rules and shows that the petition for rehearing was served by mail and therefore "made" on Friday, September 3, 1954, three days before the effective date, but that the document was not stamped as filed over the weekend nor until September 7, as Monday, September 6, was Labor Day.

As further authority for the timely service of their petition for rehearing the petitioners cite the Public Utility Commission's Rule 76 (Cal. Admin. Code, tit. 20) which provides as follows: "Petitions for rehearing of a decision shall be served upon all parties and should be filed before the effective date thereof. . . ." It is contended that the word "should" as relating to the time of filing is used in its permissive sense as distinguished from the mandatory word "shall," relating to the time of actual service on adverse parties. (See *United States* v. *Ranes,* 48 F.2d 582, 584; *United States* v. *Strickrath,* 242 F. 151, 153.)

The question therefore concerns the meaning to be given to the word "made" as employed in the statute. If it is deemed to be the equivalent of the word "served" it would follow that by operation of section 1013 of the Code of Civil Procedure the application was made to the commission at the time it was deposited in the United States mails.

It seems obvious that the provision of the statute as to when an application is "made" is uncertain. By applying the reasoning with reference to the rules applicable to judicial appeals and rehearings which are remedial in nature, the construction in doubtful cases should be in favor of preserving the right whenever substantial interests are not adversely affected by the claimed delay (*People* v. *Bryant,* 207 Cal. 450, 452 [278 P. 1025]; *People* v. *Bank of San Luis Obispo,* 152 Cal. 261 [92 P. 481]; *San Francisco* v. *Certain Real Estate,*

42 Cal. 513; *cf. State ex rel. Alton R. Co. v. Public Service Com.* (1941), 348 Mo. 780 [155 S.W.2d 149]), and the matter be heard on its merits. This appears to be such a case. Accordingly it is concluded that the application for a rehearing was timely made.

The order is affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Respondent's petition for a rehearing was denied October 19, 1955.