## The People v. Willard Braman.

*Threats to accuse another of crime with intent to extort money.* Whether a written communication to the effect that a third person named will commence. proceedings against the person addressed for an assault with intent to commit murder if the prosecuting attorney does not, and will also bring suit for damages, in both of which suits he intends the writer for the chief witness, whose testimony will be sufficient to convict, and which demands of the person addressed whether he will stand trial and be sent to state prison for a term of years or pay the writer a sufficient sum to enable him to leave that part of the country and not appear against him, can be made the basis of a charge under the statute (*Comp. L. 1871,* § 7523,) punishing threats to accuse another of a crime or offense with intent to extort money:—*Quære?*—COOLEY, J., with whom CHRISTIANCY, J., concurs, holding the affirmative, and GRAVES, CH. J., with whom CAMPBELL, J., concurs, holding the negative.

*Threats: Accusation: Author: Third person.* Whether the accusation menaced must, in order to satisfy the statute, be threatened as one to come from the author of the threat, and not from a third person:—*Quære?*—GRAVES, CH. J., and CAMPBELL, J., holding the affirmative, and COOLEY and CHRISTIANCY, JJ., the negative.

*Threats to accuse another of crime, etc.* Whether the accusation threatened can be any thing short of the taking of some step that enters into or is substantially connected with the institution or beginning of a prosecution:—*Quære?*

*Criminal exceptions: Stay of proceedings: Divided court: Practice.* In criminal cases where exceptions are certified to the supreme court before judgment, the court below can take no further steps until instructions are certified back; and where the supreme court are equally divided on the question whether the act committed constituted any criminal offense, no further proceedings ought to be taken against the defendant.

*Heard July 8. Decided October. 30.*

Exceptions from Houghton Circuit.

PEOPLE *v.* BRAMAN.

The communication upon which this prosecution was based was as follows, viz.:

"HOUGHTON, Mich., Jan. 17, 1874.

"MR. CHARLES EDWARDS:

"You doubtless know that James Allen will commence prosecution against you in a short time, if the prosecuting attorney does not; that is the reason I am detained here; he also will commence a suit against you for damages, both of which suits he intends me for the chief witness, it being well known that my testimony will convict you of either,—a thing that I don't wish to do, but shall be compelled to if you and I cannot come to terms. Now, sir, I have appealed to you in the sense of one who does not wish to do you harm; and now, which will you do, stand trial and let Jimmie Allen collect damages (which will not be very small), and then be convicted and sent to *state's prison* for a term of years, after paying your lawyers and expenses of the court; or will you pay me a sufficient sum so I can leave this part of the country, and never appear against you? and if that is done, Allen can do nothing, and then the matter will be settled now and forever, a thing that is desirable for your well-being and reputation. If you desire an interview with me, and wish to come to terms, you will indicate it by taking out your handkerchief and blowing your nose when next I meet you.

"N. B.—What is done must be done immediately, for delay is dangerous, I can assure you; and, Charley, as you value your safety, you will mention this to no person, not even your own brother. Now beware what I tell you, and all will be well; otherwise, it will not. All that we have to accomplish must be done between this and Monday night.

"Yours devotedly,
"WILL BRAMAN."

*Isaac Marston, Attorney General,* for the People.

*Chandler & Grant,* for respondent.

COOLEY, J.

The prisoner is charged with having, with intent to extort money from one Charles E. Edwards, feloniously and maliciously, by a written communication, threatened to accuse said Edwards of the crime of assault with intent to murder. The communication is set out in the information, and purports that one James Allen will commence proceedings against Edwards if the prosecuting attorney does not; and will also bring suit for damages, in both of which suits he intends defendant for the chief witness, whose testimony will be sufficient to convict; and it demands of Edwards whether he will stand trial and be sent to state prison for a term of years, or pay defendant a sufficient sum to enable him to leave that part of the country, and not appear against him. The defendant having been convicted, now alleges exceptions, the chief of which is that the threat made is not within the statute.

The statute (*Comp. L.*, § *7528*) provides that "if any person shall, either verbally or by any written or printed communication, maliciously threaten to accuse another of any crime or offense   *   *   with intent thereby to extort money," etc., he shall be punished, etc. The exception is, that the threat is not a threat to accuse of crime, but a threat to be a witness, in the contingency that a prosecution is commenced by another person.

The exception to my view is not well taken in point of fact. The communication contains a distinct assertion, amounting in itself to a threat, that prosecution will be commenced. It follows this with a like distinct assertion, that the party complainant intends defendant for the chief witness, and that his testimony will be sufficient for a conviction, which will be followed by sentence to state prison. This contemplates no contingency whatever, but conveys the clear and unequivocal intimation that prosecution will be. instituted, and that defendant will give such evidence on the trial as will send the person threatened to state prison.

If the meaning of the communication were doubtful, the intent would be a question for the jury.—*Rex v. Girdwood, 1 Leach, 142; Rex v. Abgood, 2 C. & P., 436; Commonwealth v. Dorus, 108 Mass., 488; Ros. Cr. Ev., 879.* It was submitted to them in this case, and they found the intent to be as charged; but I think it was unnecessary, as the intent seems to me perfectly clear on the face of the writing. The only question that arises upon it is a question of law, and that is, whether the defendant keeps clear of the statute by making it a part of his threat that the institution of the criminal proceedings shall be by another person.

It has been held that a threat to procure witnesses to support a complaint already made is not a threat to accuse. —*Rex v. Gill, 1 Lewin C. C., 305; Rosc. Cr. Ev., 881.* That case is cited for the defendant here, but it has no analogy to the present. A threat to do something in support of an accusation already made is clearly not a threat to accuse; but in this case there was no accusation, and the defendant's threat embraced one to be made thereafter, followed by evidence in support of it that should be sufficient for a conviction. It was, therefore, a threat that a formal accusation of crime should be made, and that defendant would follow it by an accusation as a witness before the jury, sufficient for his conviction.

If defendant, in his communication, had confined his threat to an assertion that unless the money he demanded was paid him, he should give evidence sufficient to convict Edwards of an assault with intent to murder Allen, the offense would unquestionably have been complete. The nature of the threat is not varied by the addition which purports to indicate how the case is to be put in form to receive defendant's accusation. That addition is only calculated to give the threat more weight in Edward's mind; for he might well disregard a threat to give evidence when no prosecution was commenced or spoken of, and yet be terrified by one which embraced the institution of pro-

ceedings, as well as their support by the threatener's testimony.

In *Commonwealth v. Murphy, 12 Allen, 449,* it was held that a threat to cause process falsely stated to have been issued, to be served on a party for a crime, was within the statute; the court remarking that "a threat of accusation, in the sense of the statute, comprehends a threat to use any of the preliminary means necessary to cause a person to be proceeded against for a criminal offense." If this is so, a threat to give effectual testimony to convict on a prosecution which is threatened to be instituted must be still more closely embraced by it. The case of *Commonwealth v. Dorus, 108 Mass., 488,* is more directly in point. The threat alleged was set forth in the information as follows: "Halloo, old fellow, I want you; you have seduced this girl (a girl then present); she will swear you have; her oath will stand twice as strong as yours, and send you to state prison for twenty years. Go with me. I am detective Jones, and if you will give me a thousand dollars I will let you go." This was held sufficient. But it will be observed that defendant made no threat of any thing to be done by himself, except what might be implied from his assuming the character of an arresting officer. The pith of the threat was that the party threatened should be accused of crime and convicted on the girl's testimony; and the case differs from this mainly in that here the party making the threat goes further, and proposes to give the evidence himself.

I have not been able to concur in the view that the threat of an accusation otherwise than in court would not be within the statute. If such be the case, the statute needs amendment, for a threat of any public accusation of crime is as much within the reason of the statute as a threat of a formal complaint. The fear excited and the attempted profit from it constitute the ingredients of the offense; and in many cases, especially those of females and of men in peculiar positions of trust or employment, where even a well-grounded suspicion might be ruinous, the prob-

ability of a judicial investigation in which the truth might be sifted would not be likely at all to add to the terror of the charge, and in some instances might even tend to mitigate it. That the word accuse is employed in other cases in the statutes in a sense implying a formal complaint is conceded; but in cases where it is thus used the context shows the restrictive meaning; and I cannot conceive that any number of such instances could have any tendency to prove that the word was not employed in its general sense when the explanatory and restrictive context was wanting. There is no authority for holding that the word is employed with this limited meaning in this or any similar statute. On the contrary, under *statute 7 and 8 Geo. IV., c. 29,* § *7,* which provided that if any person should accuse or threaten to accuse any other person of any infamous crime, etc., with a view or intent to extort or gain from him, and should, by intimidating him by such accusation or threat, extort or gain from him any chattel, money, or valuable security, every such offender should be deemed guilty of robbery, etc., it was held that the threat to accuse need not be a threat to charge before any judicial tribunal; a threat to charge before any third person was sufficient.—*Robinson's Case, 2 Moo. & Rob., 14; 2 Lew. C. C., 273; Rosc. Cr. Ev., 910.* This ruling is in point here, and appears to me to be sensible and just.

Several other exceptions were taken on the trial below, only one of which appears to me to call for comment. The defendant put a witness on the stand by whom he sought to prove that the threatening commuication was not in defendant's handwriting; and the witness, after testifying to such knowledge on the subject as would warrant the expression of an opinion, swore to his opinion that it was not. He was then asked in what respect it differed from the handwriting of defendant; and this question, on objection, was ruled out. I think it ought to have been allowed to be put. But I also think that the extent to which a party is to be suffered to go in examining his own

witness to bring out the reasons for an opinion expressed by him must in general be left in the discretion of the circuit judge. There was no abuse of discretion in this case, though a more liberal ruling would have been advisable.

In my opinion the exceptions should be overruled.

CHRISTIANCY, J., concurred.

GRAVES, CH. J.

The defendant was lately convicted of an attempt, through a communication in writing, to extort money from one Edwards, and the case is certified to this court on exceptions before judgment.

The information was based on § *7528, Comp. L. 1871,* and alleged that by means of the communication, which was set out at large, the defendant threatened *to accuse Edwards of an assault with intent to murder.*

Preliminary to any specific reference to those points which will be examined, it seems pertinent to observe that, as the setting out of the writing could not change its meaning, it must continue to be understood in the pleading in the same sense as out of it.—*Ferguson v. Harwood, 7 Cranch, 408 ; Mayor, etc., of Lyme Regis v. Henley, 2 Clk. & Fin., 331, 352 ; Arch. C. P. & E., 46.*

Bearing this principle in mind, we may pass to the main inquiry; and the chief and most serious question is, not whether in truth the communication was the vehicle of *a* threat, or in fact amounted to *some kind* of a malicious attempt to extort money; but whether it conveyed the specific threat signified by the legislative description,— whether, conceding that the act charged and proved constituted a malicious threat to and against Edwards with intent to extort money from him, it was at the same time a threat by the defendant " to accuse " Edwards " of a crime or offense;" and this general question really presents two of a more definite and precise character. The *first* is, supposing a

threat which menaces an accusation, must it likewise, in order to satisfy the statute, be one in which the *accusation menaced is threatened* as one to come *from the author of the threat;* or may the accusation be threatened as one to come *entirely from others?*

The *second* concerns the required nature of the accusation itself as threatened. May it consist either of a non-judicial imputation, or of testimony under an accusation made by a third party; or, on the other hand, *must it enter into*, or be *substantially connected with, the institution or beginning of a prosecution?* In regard to the first question, it will be observed that the words of the law are " if any person shall by any written * * communication maliciously threaten to accuse *another* of any *crime or offense,"* etc., and the meaning of this language may not be strained to extend the penalty to cases which the terms do not *strictly* include.—*1 Bish. C. L.*, §§ *134, 139; Rex v. Pickford, 4 Car. & P., 227; People v. Griffin, 2 Barb. R., 427; United States v. Sheldon, 2 Wheat., 119; Daggett v. The State, 4 Conn., 61; U. S. v. Wiltberger, 5 Wheat., 76.*

Do not the expressions which the legislature have here employed fairly denote that the accusation threatened must be signified or indicated as one to *proceed from the defendant?*

When the law speaks of *his* threat *" to* accuse," when it exclusively alludes to the defendant and the party threatened, and makes no reference to any one else, in the relation we are now considering, can it be supposed that it was intended to include the case of a threat that some *third* party would accuse?

If such had been the design, we may suppose the legislature would have expressed themselves in terms certainly more appropriate to convey it. Considering the phraseology used, and considering also that it occurs in a provision introducing and defining a criminal offense, I am unable to apply the expression broadly and as though the words imported no *limitation.* The idea conveyed is, as

it seems to me, that the *accusation* menaced is to be one threatened to come *from* the *party* threatening, and not exclusively from some other.    Hence, however malicious and wicked the threat, unless it menace a criminal accusation by the author of the threat, the case is not *within* the offense the legislature have seen fit to mark out.—*1 Bish. C. L.,* § *67 ; Coe v. Lawrance, 16 E. L. & E., 252 ; Reg. v. Williams, 1 Den. C. C., 39.*

Passing to the next consideration, it will be noticed that the accusation threatened is required to be of a " crime or offense."

The word " accuse " is consequently closely connected in sense and brought into immediate legal relation with the expression " crime or offense."    As the two members of the sentence stand thus connected and related, we are assisted thereby in the endeavor to find out what sort of accusation the legislature contemplated.    They were thinking of an accusation of " *crime* or *offense*," and not of imputations of another kind, however public or injurious.   They explicitly stated that the threat must be one, not to " accuse " merely, but to *accuse of a crime or offense.*

In what sense, then, did they use the word " accuse " ? Substantially in that sense, I think, in which the law *generally* uses it in regard to criminal procedure.    The relative position of the various terms in the sentence, and the subject matter, strongly favor that view ;  and I can discover no element in the statute which fairly infringes it. Now, the words " accuse " and  " accused " are familiar terms in our law ;  and I am not aware of their ever being used in constitutions or statutes in any vague and merely popular sense.

The expression " to accuse " is used to denote the bringing a charge against one before some court or officer; and the person thus charged is often referred to as the " accused." When one has proceeded to " accuse " another before some officer or tribunal, the person so proceeded against is called the " accused."    A few instances may be cited to illustrate

the uniform sense in which the term is used in our law. The constitution of the United States declares that in " all *criminal prosecutions, the accused shall enjoy the right to a speedy and public trial,*" etc.—*Art. VI., of the Amendments.* A similar expression was used in the first constitution of this state (*Subdivision 10 of Art. I.*), and a like one is found in the present constitution.—§ *28, Art. VI.* Chapter one hundred and fifty-one of the *R. S. of 1846 (ch. 242 C. L.*) is entitled " Of the rights of persons who are *accused* of crimes and offenses," and it is the first chapter of the class of enactments to which the statute under consideration belongs, and is strictly in *pari materia.* The first section provides that " on the trial of every indictment or other criminal *accusation,* the party *accused* shall be allowed," etc.; again, in the statute regulating criminal proceedings before justices of the peace, the defendant, after arrest, is described as the "*accused,*" in connection with the giving of bail (*Comp. L.,* § *5528*); and in several succeeding sections the term is used to identify the particular party who is being criminally prosecuted.

Indeed, so precise and unvarying is the sense in which the expression in its different grammatical forms has been employed in our laws, and so constant has been our legislative usage, that no inconsiderable surprise could be avoided if it were seen to be used in an act defining a crime with a wholly unlimited or vague and indefinite meaning.

On the whole, I regard it as clear that the legislature must be considered as having manifested, with reasonable distinctness, the ideas they annexed to the terms in question, and that they must be taken to have had in view substantially the same sense generally observed by them, and by courts and law writers; and that when they spoke through this highly penal enactment of a threat to accuse of a crime, and proceeded to mark out a penitentiary offense, they should be understood as having meant, not something anomalous in law language, not an accusing by way of railing, or slander, or by way of bearing witness under a sep-

arate and distinct accusation made wholly by others, but the institution, or participation in the institution, of a criminal charge before some one held out as competent to entertain such a charge in lawful course.—*State v. South*, *5 Rich.*, *489 ; State v. Nates, 3 Hill, S. C., 200 ; Stephenson v. Higginson, 18 E. L. & E., 50, 3 H. L., 638 ; United States v. Freeman, 3 How., 556 ; Ex parte Prideaux, 3 Myl. & C., 327, 332 ; 1 Bish. Cr. L., § 70 ; Dwarris, 581 ; Broom's Max., mar. p. 523, 581.*

If this is the true reading of the statute, then the offense cannot be established by showing the defendant threatened that a charge would be imputed in some other form, however public, or by showing that he threatened that he would give evidence under some accusation or charge which he predicted or menaced as likely or certain to be preferred in judicial course, exclusively by some third party.

It is not intended to maintain that the exact nature of the accusation, or degree of crime pointed at, must necessarily be directly expressed in the threat, or may not be indicated by vague and general expressions; nor is it intended to assert that the law may not apply if it appears that some one besides the threatener is held out as one to join or aid in the accusation. It is not at present necessary to consider that. But I think we are required to hold that it must appear that the suggested *accusation* of whatever offense was threatened was one to be brought about either by the *defendant alone, or at least in conjunction with others,* and that the *accusation* so threatened was to be of a *judicial nature.* This view appears to have been in the minds of the supreme court of Massachusetts when, in speaking of the law of which ours is a copy, they said, " a threat of accusation, in the sense of the statute, comprehends a threat to *use any of the preliminary means necessary to cause a person to be proceeded against for a criminal offense.*"—*Com. v. Murphy, 12 Allen, 449.*

Without extending this examination to other features of the statute, it is next to be considered whether the com-

munication set forth, either with or without the other evidence, fairly tended to show that Braman threatened that *he* would commence, or aid in commencing, any criminal prosecution against Edwards; or, in the language of the Massachusetts court, "use any of the *preliminary means necessary*" thereto. The case on this branch of it seems to me to be clear. The letter foreshadowed the institution of two proceedings, and only two; one to be commenced by Allen, and the other by the prosecuting attorney. And in speaking of his connection with the matter, and of what he would *do*, the defendant did not state, imply or insinuate, that he would be concerned in the act of accusing, or would use any of the *necessary preliminary means*. The reasonable import of his statements would tend to negative any inference that he held himself out as one to prosecute, or as one to "use any of the *preliminary* means necessary" in a prosecution. He represented that he was *detained to be a witness when the other parties should accuse*, and that he would be *compelled* to testify *under* their *accusation* when made. The extent of what he threatened was, that if not silenced by a bribe, he would give damaging evidence against Edwards, under, and in support of, accusations he held out as about to be made by others. Whether or not he would give the threatened evidence, was made contingent, not upon his accusing, not upon his "using any of the necessary preliminary means" to place Edwards under a criminal accusation, but upon an act to be done by others, not represented as being, and not apparently being, and not proved as being in any way subject to his direction or control.

On this aspect of the case the other evidence claimed to help the prosecution, waiving all question as to the right to resort to other evidence to make out material elements contrary to the communication, or not reconcilable with it in sense, the extrinsic proof here harmonizes, on the points under consideration, with the view taken. Reading the letter as a ground of charge, and looking at all the facts,

it appears to me that the case, as laid, and as made out by the evidence, however immoral, however wicked, is perfectly distinguishable from the offense delineated in the statute, and inconsistent with it. That the case really charged, and substantiated by the evidence, is, *not* that Braman threatened Edwards that *he, Braman,* would accuse him of any crime, or *accuse* him at all; not that his will would contribute to any accusation against him; but that he threatened him *that others would accuse*; and that he, Braman, *under* such accusations, would be compelled to give, and would give, very prejudicial evidence against him, unless paid for leaving the country. The distinction appears to me to be plainly marked and substantial.—*R. v. Dunkley, 1 Mood. C. C., 90; R. v. Gill, 1 Arch. P. A., 302.*

If the legislature, in enacting what combination of facts should subject one to the penalty here denounced, have virtually excluded another but resembling state of facts, which, in the judgment of all, or most men, would be regarded as equally, or even more deserving of the penalty, *it is* not for the court to insert by construction what the legislature have so left out or excluded. There are other difficulties of a serious nature in the case; but, having reached a result on the main subject fatal to the prosecution, I do not consider them. I am of opinion that the conviction should be set aside, and the information quashed.

CAMPBELL, J., concurred.

Afterwards the attention of the court was called to the fact that the prosecuting attorney had moved in the court below for judgment on the verdict, and a ruling was requested as to the practice in criminal cases where the supreme court were equally divided on exceptions certified up under the statute before judgment.

THE COURT held that where in criminal cases excep-

tions are certified to the supreme court before judgment, no further proceedings can be taken in the court below until the former court shall certify its instructions how to proceed; that in this case, the supreme court being divided upon the question whether the act committed constituted any criminal offense, it would be unseemly to proceed further against the defendant, and that practically such a result should put an end to the prosecution, though no order to that effect had been entered.