CEDAR RAPIDS, IOWA FALLS & NORTHWESTERN RAILWAY COMPANY, Appellant, v. LOUIS ELSEFFER *et al.*, Appellees.

1. **Railroads**: MUNICIPAL AID: FORFEITURE. Under section 7 of page 110 of the Laws of 1876, providing that taxes voted in aid of any railroad which remain in the treasury for more than two years after the same have been collected, shall be considered forfeited, *held*, that where a portion of a levy for such purpose had been paid to the county treasurer and held by him for four years, without the knowledge of the railroad company in whose favor the tax had been voted, and it was believed further by the company that a decision of the courts that the company was not entitled to a second installment of the tax voted, but not yet levied, affected the whole tax, the right to the taxes held by the treasurer was forfeited.

2. ———: ———: ———. The above statute is not repealed by chapter 192 of the Laws of 1880, providing for a forfeiture of such taxes when work upon the railroad, to which aid has been voted, shall not have been commenced within the township within two years, or such railroad company shall have neglected for six months to comply with the terms of the notice and petition under which such taxes have been voted.

*Appeal from Franklin District Court.*—HON. D. R. HINDMAN, Judge.

WEDNESDAY, FEBRUARY 3, 1892.

ACTION at law upon the bond of the defendant Elseffer, who is treasurer of Franklin county. There was a demurrer to the answer, which was overruled, and the plaintiff appeals. The facts appear in the opinion.—*Affirmed.*

*Soper, Allen & Morling* and *S. K. Tracy,* for appellant.

*Taylor & Evans,* for appellees.

ROTHROCK, J.—I. It will not be necessary to set out the pleadings in detail, in order to understand the questions involved. In our opinion, the record presents really but one material question, and the facts relating thereto are as follows:

1. RAILROADS: municipal aid: forfeiture.

In June, 1880, the voters of three townships in Franklin county voted a railway aid tax to the plaintiff of five per cent. upon the taxable property of the respective townships. One half of the tax was to be levied in the year 1880, and the other half in the year 1881. The vote was taken on the condition that the plaintiff should construct and complete its railroad, and have cars running thereon to certain points, on or before January 1, 1881, one half of the taxes to be collectible when the railroad should be operated to certain places named, and the other half one year after. There was the further condition that, if the plaintiff should fail to comply with the first-named condition, it should forfeit all right to the tax. The first half of the tax was duly levied. All of the conditions for that installment of the taxes were complied with by the plaintiff, and the county treasurer proceeded to collect the taxes so levied, and paid over to the plaintiff a greater part of the same, and turned over to his successor in office the sum of about twenty-four hundred dollars, which sum has not at any time been paid to the plaintiff.

The taxes in controversy were all paid into the county treasury before January 1, 1884. This action was commenced on the fifth day of April, 1889. The county treasurer did not at any time notify the plaintiff that the tax money in controversy was in the treasury subject to the plaintiff's order, and the plaintiff made no demand for the money until about April 20, 1888, for the reason that it had no knowledge that the money was in the treasury; and for the further reason that the board of supervisors of the county refused to levy the second installment of the tax in 1881; and the plaintiff having brought an action of *mandamus* to compel the levy to be made, it was determined in that action that the plaintiff had no right to the second installment of the tax, and the same has never been levied. The officers of the plaintiff, by mistake and oversight, supposed that the whole of the tax was invalidated by the decision in said case in *mandamus*, and rested in that belief until it was discovered that the first levy was not affected by the decision, when demand was made for the tax now in controversy. The defendants, by their answer, claim that the tax in question was forfeited by the plaintiff because it was allowed to remain in the county treasury for more than two years after it was collected. The defendants also claimed that the action was barred because not brought within five years after the cause of action accrued. The demurrer was sustained as to the first ground of defense, and overruled as to the last.

As we think the rights of the parties must be determined upon the failure of the plaintiff to make demand therefor within two years, it is unnecessary to consider any other question in the case. The taxes in question were voted under the general railroad aid tax law passed by the General Assembly in the year 1876. Session Laws, 1876, p. 110. Section 7 of that act is as follows:

"Should the taxes voted in aid of any railroad under the provisions of this act remain in the treasury

. more than two years after the same have been collected, the right to them by the railroad company shall be considered forfeited, and the persons paying the said taxes shall be entitled to receive from the county treasurer the amount by them paid to the said railroad company, in which case the persons paying the said taxes shall be entitled to receive back only their proper *pro rata* share thereof remaining.''

Here is a positive, unambiguous provision of the law which admits of no other construction than that which its words plainly and unmistakably declare. Unless there is some amendment to the act which modifies or repeals it, there is no rule of construction by which its plain provisions can be disregarded. It applies equally to a case where a railroad company has complied with the conditions of the vote by the building of the road as to a case where the taxes remain in the treasury by reason of a failure to perform conditions subsequent to the payment of the tax. We do not think that courts should have any hesitancy in upholding this statute because it provides for a forfeiture. It is not a ''forfeiture'' in the usual signification of that term. There is nothing odious about it. The vote of a tax in aid of building a railroad is very different from a contract between private persons. It is true the railroad company undertakes to build the road and the voter undertakes that the tax payer will pay the tax. But the tax payer who is a non-resident, or who, though a resident, voted against the tax, is compelled to be a party to the undertaking without his consent or againt his will. Again, by section 5 of the act, the railroad company is required to issue its corporate stock to the tax payer for his taxes. It may be that a company whose stock is of any value may determine that it is better to keep its stock, and permit the county treasurer to return the taxes to the tax payer. We merely mention these considerations as touching the supposed hardships and odiousness which attach to the ordinary forfeiture.

But it is contended by counsel for the appellant that the forfeiture should not attach because the plaintiff's officers did not know that the taxes were in the treasury, and for several years supposed that all the tax was invalidated by the decision in the *mandamus* case above referred to. There is no room for relief on any such ground provided for in the statute; and, if the statute did provide that the forfeiture should not take effect where the railroad company showed a reasonable excuse for allowing the money to remain in the treasury for more than two years, the excuses preferred by the plaintiff ought not to be allowed to prevail. It would involve a finding that the officers of the defendant did not know what was decided in the *mandamus* case for about four years after the decision was made, and that they did not know that any of the first installment of the tax was in the hands of the treasurer for about the same length of time.

II. It is claimed, however, that by chapter 192 of the Acts of 1880 there was no forfeiture of the taxes in controversy. That act is as follows:

"Section 1. That whenever any taxes have been voted, and levied upon the property of any township, city or town, in any county in this state, under the provisions of chapter 123 of the Acts of the Sixteenth General Assembly, and chapter 157 of the Acts of the Seventeenth General Assembly, to aid in the construction of any railway within this state; and the work of construction of the said railway shall not have been in good faith commenced in said township, or in the adjoining township, where the line of said railway does not pass through such township, within two years from the date of the time when such taxes were voted, the right of such company to any such taxes shall be declared to be forfeited, and the board of supervisors of such county shall abate and cancel such tax on the taxbooks of the county, and refund any taxes in the

treasury of the county that have been paid into such treasury to the person paying the same. The provisions of this section are intended to cover all cases where taxes have been voted, and no time was stated in the notice of such election when the work was to be commenced.

"Section 2. When taxes have been voted and levied to aid in the construction of any railway within this state by any township, town or city, under and by virtue of the provisions of the acts of the general assembly referred to in section 1 of this act, and such railway company shall have neglected for the space of six months to comply with the terms of the notice and petition under which such taxes have been voted, and such fact shall be certified to the board of supervisors of the county wherein such taxes were voted by the trustees of the township or town or city council, it is hereby made the duty of the board of supervisors of such county to abate and cancel all such taxes on the taxbooks of the county, and refund any money in the county treasury to the persons who may have paid the same."

It is urged that this act by implication repealed section 7 of the act of 1876. We do not think this position can be maintained. The first section of that statute, by plain and unmistakable language, provides for the forfeiture of a tax, where no time was stated in the notice for the commencement of the work of building the road. It fixes the time at which the work must be commenced at two years, and that for failure to do so the board of supervisors shall abate and cancel the tax on the tax books, and refund any taxes which have been paid to the tax payers. Section 2 of the act provides that the right to the tax shall be forfeited and abated by the board of supervisors for a failure for six months to comply with the terms of the notice and petition under which the tax was voted. It is evident from a reading of both of these acts that there was no

repeal of any part of the act of 1876 by the enactment of 1880. It neither repeals by apt words nor by implication. It merely supplies omissions and other conditions and limitations not contained in the act of 1876.

We might further extend this discussion, and show that the forfeiture of these taxes can well be sustained by subsequent acts of the legislature. But it appears to us to be unnecessary to further consider the question. We think it was correctly determined by the district court.

III. It appears from the record that the persons who paid the tax in controversy intervened in the action, and set up substantially the same defense as the treasurer. They join with the treasurer in an appeal from the sustaining of the demurrer, so far as it pertains to the limitation of five years. As the cause is disposed of in favor of the treasurer and the tax payers on the other ground of the demurrer, it is not necessary to consider their appeal. This disposition of the case renders it unnecessary to dispose of the appellees' motion to affirm the case.  AFFIRMED.