PEOPLE ex rel. LESNIAK v. MIKULSKI.

(City Magistrates' Court of New York City. March, 1914.)

1. THREATS (§ 1*)—OFFENSES—STATUTE.

Under Penal Law (Consol. Laws, c. 40) § 551, making any person knowingly sending, or delivering or making, and, for the purpose of delivering or sending, parting with possession of any letter or writing with or without a name subscribed thereto, with intent to annoy any person, guilty of a misdemeanor, it is not necessary to the offense to prove that the author of the writing addressed or caused it to be directly delivered to the person affected thereby if he intended that it should reach such person; and the offense may be also committed by sending a letter containing a threat of some other person, provided it is sent to annoy; and hence defendant's anonymous letters to the police department, complaining of the illegal conduct of complainant's saloon, not communicated to or intended for complainant, who had no knowledge until he obtained them from the department, in the absence of privilege constituted an offense.

[Ed. Note.—For other cases, see Threats, Cent. Dig. §§ 1–6; Dec. Dig. § 1.*]

2. THREATS (§ 1*)—COMPETENCY—PRIVILEGE.

It is against public policy for police officers to disclose their source of information of the commission of crime.

[Ed. Note.—For other cases, see Threats, Cent. Dig. §§ 1–6; Dec. Dig. § 1.*]

3. THREATS (§ 1*)—OFFENSES—ANNOYANCE.

Under Penal Law (Consol. Laws, c. 40) § 551, making it a misdemeanor to knowingly send or deliver any letter or writing, with or without a name subscribed thereto, with intent to annoy, the writing must be calculated to cause real annoyance and disturbance in the mind of the person affected, and not merely a whimsical or capricious annoyance, although no precise words are required to convey a threat or cause annoyance. But the statute does not prevent bona fide complaint of the commission or suspicion of crime.

[Ed. Note.—For other cases, see Threats, Cent. Dig. §§ 1–6; Dec. Dig. § 1.*]

4. THREATS (§ 1*)—STRICT CONSTRUCTION—PENAL STATUTE.

Under such statute, one charged with an offense is entitled to a strict construction.

[Ed. Note.—For other cases, see Threats, Cent. Dig. §§ 1–6; Dec. Dig. § 1.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. THREATS (§ 1*)—OFFENSES—COMPLAINT TO POLICE.

Under such statute anonymous communications in writing, addressed to the police department, and complaining of complainant's illegal conduct of his saloon, without any unlawful intent, or any intent that they should be communicated to complainant, were privileged so as to constitute an offense.

[Ed. Note.—For other cases, see Threats, Cent. Dig. §§ 1–6; Dec. Dig. § 1.*]

6. THREATS (§ 8*)—QUESTION FOR JURY—PROBABLE CAUSE.

Where a person, interested in the maintenance of law and good order, in good faith furnishes the administrative authorities with information as to a crime, or a supposed crime, the question of qualified privilege, is one of law for the court, while malice, good faith, etc., are questions of fact.

[Ed. Note.—For other cases, see Threats, Cent. Dig. § 13; Dec. Dig. § 8.*]

7. THREATS (§ 7*)—BURDEN OF PROOF—MALICE.

In such case the people, charging that the informer acted with actual malice, have the burden of proving such malice.

[Ed. Note.—For other cases, see Threats, Cent. Dig. § 12; Dec. Dig. § 7.*]

8. THREATS (§ 7*)—INTENT—EVIDENCE.

Under Penal Law (Consol. Laws, c. 40) § 551, making it a misdemeanor to send or deliver a letter or writing with intent to annoy, such intent may be inferred from all the circumstances of the case, the law only presuming an unlawful intent from the intentional commission of an act in itself unlawful.

[Ed. Note.—For other cases, see Threats, Cent. Dig. § 12; Dec. Dig. § 7.*]

Prosecution by the People of the state of New York, on the complaint of Adam Lesniak against Walter Mikulski. Complaint dismissed, and defendant ordered discharged.

Louis Bleier, Deputy Asst. Dist. Atty., of New York City, for the People.

John A. O'Rourke, of New York City, for defendant.

FRESCHI, City Magistrate. The prosecution here charges a violation of section 551 of the Penal Law, which makes it a misdemeanor to send threatening or annoying letters under circumstances and in a manner not amounting to blackmail. The exact language of the statute under consideration is as follows:

"A person who, knowing the contents thereof, sends, delivers, or in any manner causes to be sent or received any letter or other writing threatening to do any unlawful injury to the person or property of another, or any person who shall knowingly send or deliver or shall make and, for the purpose of being delivered or sent, shall part with the possession of any letter, postal card or writing, with or without a name subscribed thereto or signed with a fictitious name or any letter, mark or other designation, with intent thereby to cause annoyance to any person, is guilty of a misdemeanor."

The principal witness for the people conducts a poolroom and a saloon, regularly licensed for the retail traffic of liquor at the premises No. 523 Sixth avenue, in the city and county of New York. During the year 1913 it seems that the defendant complained, in writing, concerning alleged unlawful acts committed by the complainant at his

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

place of business. All these letters were anonymous and, in my opinion, were written by the defendant and by him addressed, sealed, and sent to the mayor and the police commissioner. These communications charged, in substance, violations of the Liquor Tax Law, gambling, and other unlawful acts on the premises. Without setting forth verbatim the subject-matter of these letters, a mere summary of them suffices to a discussion of the law points in the case. The first letter, dated March 11, 1913, states that "all kinds of games of chance" are permitted and "that the place is open at all hours of the night and fighting is a daily occurrence." The next letter bears date September 8, 1913, and repeats the gambling charge, and that the place is a "hangout for persons of bad repute." The third letter of September 26, 1913, is practically to the same effect and the letter to the mayor, dated October 20, 1913, says that the place runs as a "poolroom without a license." The defense claims that no crime has been committed, and moves at the close of the people's case for a dismissal of the complaint and for the discharge of the defendant on this ground.

This section in its present amended form has not been construed by the courts, so far as my research has gone, except in one instance by Mr. Justice Mayer in People v. Loveless, 84 N. Y. Supp. 1114. That case, however, is not analogous to the facts in the case under consideration. In the Loveless Case the defendant addressed a letter that was the basis of the charge there, directly to the complainant, demanding payment of an account held for collection, and stating that if it was not paid without its being placed in the hands of an attorney, various members of an association of which he was a member would be notified that the claim against him had been unpaid and placed in the hands of an attorney for collection, which communication evidently had no other purpose than to annoy and substantially embarrass the complainant by affecting his credit, and to compel the payment by him of a disputed claim.

[1] Two points are urged by defendant's counsel. He contends: First, that because the letters in question were not addressed to the complainant and received by him, the statute does not apply; and, secondly, that, assuming the disputed letters to have been written by the defendant, they are prima facie privileged communications.

As to the first contention, I must hold against the defendant. It is perfectly clear that the legislative intent, as expressed in the Penal Law, supra, is to prohibit any person from making or knowingly delivering written threats to do an unlawful injury to person or property, or, by a writing, willfully to cause annoyance to another. Obviously the plain object of the law is to safeguard the person and to preserve and secure property rights inviolate and to guard against injury and annoyance.

Although there is no threat involved here, the same principle applies to this class of cases which come under the second subdivision of the statute, that is, the amendment (chapter 120, p. 288, Laws 1891) of the above-stated Penal Law, which deals with letters of an annoying nature.

Nothing in the letter or the spirit of this law, I think, makes it necessary, as a condition precedent to a conviction, to prove that the author of the writing addressed, or its messenger, with knowledge of its nature delivered the communication directly to the person to be affected by it. I take it that if a threatening or annoying letter is meant for him, and it ultimately reaches the person to be threatened or annoyed, even though the writing be addressed or delivered to another, the crime is committed, provided that the author or messenger, or both, intend that the subject-matter should reach the person for whom it is intended directly or indirectly; but it must be so made, and under such circumstances, as to operate, to some extent at least, on the mind of the one whom it is expected to influence. State v. Brownlee, 84 Iowa, 473, 51 N. W. 25. Like a threat, so the annoyance must come from the author or his messenger with guilty knowledge; but the proof is not necessary to show that the threat was against the person to whom the letter was directed. The offense may be committed by sending a letter conveying a threat of some other person, provided it is sent for the unlawful purpose mentioned. People v. Braman, 30 Mich. 460.

The English and American Encyclopedia of Law (volume 28, p. 145 [2d Ed.]) states it as a rule that the communication, whether oral, written, or printed, must be intended for the person threatened, and must actually come to his knowledge, even though the statute does not in terms say so.

Brownlee Case, supra, presented a charge against the defendant therein with having unlawfully threatened to kill another in order to procure his signature to a promissory note, seeking thereby to obtain remuneration in that way for a grievance of a financial nature, and to that end communicated his plans to an accomplice, who, in turn, told the complainant of them. The court said (84 Iowa, 477, 51 N. W. 27), in writing for a reversal of the conviction for extortion:

"It is clear that in this case the threats were not made to or in the presence of Wright [complainant], and it is certain it was understood that they should not be communicated to him, and that the defendant, until after his arrest, had no knowledge that they had been so communicated."

I would infer from all the circumstances of the case at bar that the defendant understood that the contents of his letters should not be communicated to, nor were they intended for, the complainant, and it seems to be the fact that the complainant had no knowledge that these matters had been stated about him until after his own waiter's arrest for a violation of the Liquor Tax Law (Consol. Laws, c. 34) in selling whisky on Sunday, November 9, 1913, for which he has been held for trial in the Court of Special Sessions. And in this connection it may be stated as a significant fact that it appears from the police report that a license for complainant's poolroom was not procured until October 30, 1913, the day following defendant's last letter.

How the complainant procured the original letters from the authorities has not been shown by competent evidence, and this phase of the case is left entirely to conjecture. Attached to the deposition before me are the anonymous letters, report of the police department, affidavit

of a handwriting expert, reports of police officials, and the correspondence between the mayor and the police commissioner, all being the original records of the police department in this case.

[2] There is no express evidence that the letters were ever sent or shown, or their contents in any other manner made known, to the complainant at the request of or with the knowledge and consent of the defendant. From the standpoint of the defendant, it is improbable that the letters were ever intended for the perusal of the complainant, and surely the police were not required to make known to him the source of their information that led to action on their part. It is against public policy for police officials to disclose their source of information. Aside from any legal obligations, there is certainly a moral obligation to keep all such communications secret. I question the right of the officials to divulge them to others. See Shinglemeyer v. Wright, 124 Mich. 230, 82 N. W. 887, 50 L. R. A. 129.

The New York police are empowered to enter and inspect to a reasonable extent all places of business having excise or other licenses to carry on business, all houses of ill-fame or prostitution, and all gambling houses. Greater New York Charter, § 315 (Laws 1901, c. 466).

[3, 4] It is fair to assume from the record here that the defendant intended that the officers charged with the duty to suppress crime should make an investigation on police lines, with the least possible publicity and annoyance to the person accused, in the matter of the charges, and then take only such police action as was warranted by the evidence that developed. The defendant, I am satisfied, acted "upon a proper occasion, from a proper motive, in a proper manner, and upon reasonable and probable cause."

True it is that annoyance may result, no doubt, from the means employed by the city officials, and not from the written complaint itself. But is such "annoyance" within the contemplation of this law?

A broad construction of the statute in question might, however, include every form of writing which may, in the relation of things under the rule of cause and effect, actually annoy any person, whether he be the person addressed or intended. Such a rule of law could be carried to extremes and work considerable injustice.

The writing must be calculated to cause real annoyance and disturbance in the mind of the person affected, and not be merely a whimsical or capricious annoyance. Trivial annoyance and idle threats are outside the pale of the law. Serious and malicious cases come within its inhibition. If the operation of the mind of such person were the sole test, then I fear that almost any letter might be held to cause annoyance. While no precise words are required to convey a threat or cause annoyance, still the inhibition deals with such cases only as have a substantial basis for the fear or annoyance caused another.

To hold that the Legislature intended by the use of the words "cause annoyance" that any person would be prevented from complaining of the commission of a crime, or the suspicion of a crime, would be to defeat the very purpose of this law, which is to prevent groundless and vicious annoyance. Every person has a right to make a complaint to the authorities, if made bona fide, and with the purpose of aiding in

the detection and prosecution of offenses against the law (Pierce v. Oard, 23 Neb. 833, 37 N. W. 677; Eames v. Whittaker, 123 Mass. 342; Garn v. Lackhard, 108 Mich. 196, 65 N. W. 764), and such complaints may cause annoyance, at times, more particularly when they result in an arrest and conviction. Annoyance of that kind is not within the purview of this statute. The defendant is entitled to a strict construction, which, in my judgment, limits the effect of this law to the cases that I have above indicated.

[5-8] As to the second contention, I hold that the communications are privileged.

If a crime or supposed crime has been committed, and a person interested in the general welfare, and concerned in the maintenance of law and good order, and charged with a duty to uphold them, furnishes the authorities upon whom rests the duty to administer the law with information concerning it, and the communication is made in good faith, with honest motives, and for justifiable ends and in a proper manner, there arises at once that question of qualified privilege, which is one of law for the court; and, if the party seeking to hold the defendant liable criminally charges that he acted with actual malice, the burden of proving it rests upon the party seeking to hold the accused, and if such evidence is adduced, the questions of malice, good faith, etc., are questions of fact to be submitted to a trial court or the jury, although it contained defamatory matter which without such privilege would be actionable and slanderous. 1 Cooley on Torts (3d Ed.) p. 436; Byam v. Collins, 111 N. Y. 143, 150, 19 N. E. 75, 2 L. R. A. 129, 7 Am. St. Rep. 726; Coloney v. Farrow, 5 App. Div. 607, 608, 39 N. Y. Supp. 460; Decker v. Gaylord, 35 Hun, 584; Dale v. Harris, 109 Mass. 193; Hamilton v. Eno, 81 N. Y. 116; Mattice v. Wilcox, 147 N. Y. 624, 42 N. E. 270; Klinck v. Colby, 46 N. Y. 427; Sickles v. Kling, 60 App. Div. 515, 69 N. Y. Supp. 944; Lovell Co. v. Houghton, 116 N. Y. 520, 22 N. E. 1066, 6 L. R. A. 363; Payne v. Rouss, 46 App. Div. 315, 61 N. Y. Supp. 705; Annotated Penal Law, § 1350, and cases there cited.

The whole case resolves itself into one of intent. This statutory offense must have the necessary ingredient of intent to cause annoyance that seems to be lacking here. I appreciate that letters charging the commission of unlawful acts without any justification therefor may be sent to the police authorities with the deliberate design of annoying a business rival, for instance; nevertheless in such cases it becomes a question of law and fact on the evidence as to whether such was the real purpose of the writer in respect to the person to be affected. The statute requires proof of the existence of intent. While the acts charged must be accompanied by a criminal intent, which may be inferred from all the circumstances of the case (Gardner v. People, 62 N. Y. 299), the law will only presume an unlawful intent from the intentional commission of an act in itself unlawful (People v. Herrick, 13 Wend. 87). This case presents no suggestion or innuendo from anything written or spoken, or from the relations of the parties themselves, indicating rivalry or animus by the defendant to injure or annoy the complainant.

It is not a reasonable inference that the defendant had any unlawful design or motive, or that he acted arbitrarily. The presumption of good faith which privilege supplies repels the idea of malice. The police were entitled to the information, and it is quite clear that the defendant did not make the statements for repetition, but, on the other hand, made them for the exclusive use of the authorities. One of the charges culminated in a criminal prosecution against the complainant's employé.

The offense is, in my judgment, incomplete and the prosecution has failed to sustain the burden of proof. The complaint is dismissed, and the defendant is ordered discharged.