PEOPLE *v.* WATSON.

1. EXTORTION—STATUTES—THREAT OF EXPOSURE OF CRIME.
  The statute penalizing malicious threats to extort money is sufficiently broad to cover a threat merely to accuse another publicly of a crime and does not require a threat to file a formal complaint and instigate a criminal prosecution (Act No. 328, § 213, Pub. Acts 1931).

2. SAME—EVIDENCE—MALICIOUS THREAT TO ACCUSE OF CRIME.
  Conviction of woman of extortion was supported by evidence submitted consisting of various letters maliciously threatening to accuse complaining witness of adultery and conspiracy to obtain an abortion with the intent to extort money from him (Act No. 328, § 213, Pub. Acts 1931).

Appeal from Berrien; Evans (Fremont), J. Submitted October 15, 1943. (Docket No. 90, Calendar No. 42,166.)  Decided November 29, 1943.

Kathryn Watson was convicted of extortion. Affirmed.

*Hamilton & Sigler,* for appellant.

*Herbert J. Rushton,* Attorney General, *Karl F. Zick,* Prosecuting Attorney (*Robert P. Small,* of counsel), for the people.

BUTZEL, J.  Defendant was charged with having orally and by written communication of the 20th day of May, and between said date and the 29th day of August, 1941, maliciously threatened and accused

Ray E. Chappel of the crime of adultery and conspiracy to obtain an abortion and with the intent then and there to extort money from him. The crime is set forth in Act No. 328, § 213, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–213, Stat. Ann. § 28.410), under the catchline "Malicious threats to ' extort money." Defendant appeals from the judgment of conviction.

It is necessary to review briefly the sordid facts as testified to by Ray E. Chappel. He conducted a jewelry business on the ground floor of a building at Niles, Michigan. There was a workshop and also a small dark room in which to fit glasses in the rear of the store. Chappel was 64 years of age; his wife was living at the time. Sometime previously he had been involved in an affair similar to the one complained of with another woman. Defendant patronized his store a few times and on March 21, 1941, brought him a small cabinet containing a negligible quantity of old gold. He took it to a room in the rear of his store. She accompanied him. He responded to advances made by her and an illicit relationship ensued. She visited the store from time to time and similar acts took place. About the 17th of May, 1941, or thereabouts, she came to the store, told him she was pregnant, and that he was responsible. She said she had been to Chicago for an examination and that she could have an abortion performed there for $400, but that she could have one at South Bend, Indiana, for $450, and she preferred to go to South Bend which is but a short distance from Niles, Michigan. He gave her $5 for an examination and the illicit relationship continued at the time. A few days later, defendant informed Chappel that she had an examination and that she was strong enough to undergo a criminal operation. It was agreed upon. He paid her $450 a few days

later. The following day and for almost three months thereafter she sent him in rapid succession notes describing her necessitous, desperate and at times dangerous physical condition as a result of the operation. The notes as a rule were delivered by messenger to whom Chappel gave money, one time giving $72, then at short intervals, $150, $50, $300, $147.52, $225, $74, $264.50, $200, $371, $328, $504, $275, $375, although he thought he sent more than the enumerated amounts.

On August 29, 1941, Chappel received two notes in one day by messenger. In the first defendant told him about a very serious condition that had developed and asked him not to be angry but that she could not get "anything from him—because he wants to know the cause and reason, et cetera, and full particulars." (Evidently "him" referred to defendant's husband.) "As far as I am concerned I would tell him." If Chappel would send her funds she would repay him from the sale of real estate and he should send reply by bearer. In the same hour, Chappel received another note from defendant as follows:

"Do you want me to go to County House for this treatment? I am ready to air the whole thing—as I am doing the suffering—not you. If you don't—what other course have I—as if it wasn't for you I could tell him all—as I don't care for myself. If you do not reply to this I will send for him to come here and bring an attorney with him as I can't go on like this. You must know this is terrible. I can't help the condition—as you made me get rid of same—paid for it—and left me in this condition.

"Now—think this over Ray dear—I am sorry—but I am sick and just can't help it. Please reply."

In reply to the first note, he wrote that he could not do anything at that time, and in answer to the second note, that the matter was a serious one and

he wanted time to think it over and would give her the answer toward the end of the week.

Chappel thereupon consulted a lawyer. On the 4th day of September, 1941, a lady messenger came to the store and asked for a package for defendant. Chappel in the meantime had called in a deputy sheriff who hid in the store when the messenger arrived. The messenger asked for the package for Mrs. Watson and Chappel gave her a sealed envelope, whereupon the deputy sheriff arrested the messenger. She told him that defendant had sent her after the package and that defendant was around the corner in a big black sedan. Defendant was arrested then and there.. She was bound over to the circuit court for trial and duly convicted.

No testimony was introduced in behalf of defendant. There is more than ample testimony to prove beyond a reasonable doubt that defendant threatened to accuse Chappel of a crime in order to extort large sums of money from him. The testimony clearly indicates that defendant visited no hospitals in Niles, South Bend or Chicago, and that the entire threats in order to extort money were founded on false statements by defendant. It is evident that Chappel was a dupe in paying over money to messenger boys from hotels and other places as the notes were presented.

Defendant on appeal contends that the people did not present a *prima facie* case of extortion as alleged in the information and that the court should have granted a motion to dismiss and directed a verdict of not guilty. Both sides rely largely on the case of *People* v. *Braman,* 30 Mich. 460, in which Mr. Justice COOLEY wrote an opinion, concurred in by Mr. Justice CHRISTIANCY, upholding a conviction under the statute, and Chief Justice GRAVES in an opinion concurred in by Mr. Justice CAMPBELL, dissented. As the opinions are available to the profession, for the sake

of brevity, we shall not quote from them. We are in accord with the opinion of Mr. Justice Cooley. We believe the statute is sufficiently broad so as to cover a threat merely to publicly accuse another of a crime and that it does not require a threat to file formal complaint and instigate a criminal prosecution. In *People* v. *Frey,* 112 Mich. 251, defendant contended that while evidence of a threat to accuse judicially was necessary to establish the offense of extortion, the proof fell short of showing more than a threat to accuse publicly. The court held that even under defendant's interpretation of the statute, which it did not decide, there was testimony to show a threat to prosecute sufficient to allow the case to go to the jury. In the instant case, the last letter written by defendant satisfies either construction of the statute. It embodied a threat of both public accusation and legal proceedings. It stated that defendant would tell "him" (evidently her husband), that if Chappel did not reply to this she would send for "him to come" and "bring an attorney with him," and that Chappel was responsible for the criminal operation which left her in a dangerous condition. Defendant threatened Chappel with not only telling her husband but also with bringing an attorney along. A fair inference would be that the attorney was to be brought in order to take legal action.

It became a question for the jury to determine whether from the letters and actions of defendant she did maliciously threaten to accuse Chappel of a crime with the intent to extort money from him. The testimony supports the jury's findings and judgment of conviction is affirmed.

Boyles, C. J., and Chandler, North, Starr, Wiest, Bushnell, and Sharpe, JJ., concurred.