OPINION OF THE COURT
Harold Lieberman, J.
On May 11, 1988 at approximately 10:05 p.m., Sgt. Donald *114 Cranna was working in a rear portion of the Hudson Police Station. At approximately 10:10 p.m. he heard the buzzer sound, indicating that someone had entered the lobby of the station. At approximately 10:12 p.m., before he went to see who was in the lobby, Sgt. Cranna received a telephone call from a person he described as being "a white male, young late teens early 20’s.” The caller said "There is a surprise for you in the front of the police station” and hung up. Sgt. Cranna then went to the front of the station and saw Jeannine Clegg, a reporter for the Hudson Register-Star, standing in the lobby holding what appeared to be a newspaper article. After being admitted to the station, Ms. Clegg told Sgt. Cranna that she had found the newspaper article taped to the front door of the police station when she entered and that she had not seen anyone in front of the station at the time.
The newspaper article consisted of a story published in that day’s edition of the Register-Star regarding the harassment trial of Joseph A. Melino which was held in this court the previous day and which resulted in a guilty verdict. In the article, Mr. Melino expressed his dissatisfaction with the verdict and his intent to appeal the conviction and to file another civil lawsuit against members of the police department. A handwritten note along the left margin read: "This is a message to Jim Dolan. If he wants to keep his nephew and niece, he better smarten up.” Jim Dolan is Chief of the Hudson Police Department.
During that same evening, Hudson Police Officer John W. Thomas was on foot patrol on Warren Street. On three occasions during the period from approximately 9:50 p.m. to approximately 10:10 p.m., Officer Thomas observed a red Pontiac driving on Warren Street in the vicinity of the police station. The vehicle was occupied by Daniel Grandinetti who was driving; his brother, Thomas Grandinetti; Jay Melino, son of Joseph Melino, and an unidentified subject.
During the investigation of this incident, Hudson Police obtained four employment applications which had been handwritten by Daniel J. Grandinetti. The applications, a fingerprint card bearing the signature of Daniel J. Grandinetti and the newspaper article were submitted to the FBI laboratory in Washington, D.C., for analysis. The result of the FBI analysis was: "Significant characteristics in common were observed when comparing the Q1 writing with corresponding portions of the K1 writing, indicating that daniel j. grandinetti must be considered a logical suspect writer.” The FBI was unable, *115 however, to positively identify Daniel J. Grandinetti as the writer and recommended obtaining samples from Grandinetti in the wording of the questioned writing.
On July 22, 1987, a Hudson City Court jury found Daniel J. Grandinetti not guilty of five counts of unlawfully dealing with a child and five counts of prohibited sale (of an alcoholic beverage) in connection with an incident in which he allegedly served alcoholic beverages to five minors while employed as a bartender. On October 27, 1987, Grandinetti commenced a lawsuit against the City of Hudson, Chief Dolan and two officers as a result of this incident.
Based on the foregoing, Hudson Police Detective Sergeant Francis A. Abitabile made the instant application for an order to compel Daniel J. Grandinetti to provide handwriting exemplars to the Hudson Police Department. At no time has an accusatory instrument been filed against Mr. Grandinetti in connection with the events of May 11, 1988.
For the reasons which follow, this court holds (1) that it possesses the power to entertain the application, (2) that handwriting exemplars are a proper subject matter of the application, and (3) the application meets the applicable standards for the issuance of the order requested.
Although there is no general statutory authority for the issuance of an order to compel a mere suspect to supply nontestimonial evidence, the Court of Appeals, in Matter of Abe A. (56 NY2d 288, 294), held that authority did exist under a court’s power to issue a search warrant. In that case, the District Attorney sought an order compelling a suspect in a murder case to submit to the taking of a blood sample so that grouping tests could be conducted. The court observed (supra, at 294) that CPL 690.05 "empowers a local criminal court to order 'a search * * * of a designated person’ in order to seize specified property which, as defined in CPL 690.10 (subd 4) '[constitutes evidence or tends to demonstrate that an offense was committed or that a particular person participated in the commission of an offense’ ”.
Based upon its holding, in People v Teicher (52 NY2d 638, 651), that CPL article 690 authorized the issuance of a warrant for the seizure of intangible visual images, the Court of Appeals concluded that the blood samples sought were within the scope of property subject to a warrant. After applying the reasoning of Teicher to the instant facts, this court concludes that handwriting exemplars are within the scope of items which are subject to a search warrant.
*116 After considering the Fourth Amendment implications of such an order, the Court of Appeals, in Matter of Abe A. (supra), also established the standards for the issuance of such an order holding that the People have the burden of establishing the following three elements: "(1) probable cause to believe the suspect has committed the crime, (2) a 'clear indication’ that relevant material evidence will be found, and (3) the method used to secure it is safe and reliable. In addition, the issuing court must weigh the seriousness of the crime, the importance of the evidence to the investigation and the unavailability of less intrusive means of obtaining it, on the one hand, against concern for the suspect’s constitutional right to be free from bodily intrusion on the other” (Matter of Abe A., supra, 56 NY2d, at 291). In his memorandum of law and at oral argument counsel for Mr. Grandinetti concedes that these are the applicable standards, but argues that the instant application fails to meet them.
Applying the standards of Matter of Abe A. (supra) to the instant application, the court has little difficulty concluding that the third requirement has been met. The providing of handwriting exemplars is an inherently safe procedure. The dangers involved in extracting a blood sample or making any other type of bodily intrusion are simply not present. The court takes judicial notice of the reliability of handwriting analysis and also observes that the applicant’s proposal that defense counsel attend the sessions at which the exemplars are to be provided affords additional assurance that the procedure will be properly and reliably carried out.
The court also finds that the applicant has met his burden with respect to the second requirement. The handwriting exemplars being sought constitute relevant evidence since they are probative of the identity of the author of the note. This evidence is material, since, according to the report of the FBI laboratory which is a part of the application, Daniel J. Grandinetti "must be considered a logical suspect writer” and "[t]he absence of known writing in the specific wording and letter combinations of the questioned writing * * * precluded positive identification.” The inference is clear that the FBI laboratory believes that a positive identification is possible if the samples it recommended are obtained and submitted for analysis.
Before performing the required weighing of interests, the court must dispose of issues raised by Mr. Grandinetti’s counsel relative to the seriousness of the crime allegedly commit *117 ted. The court agrees with counsel’s argument that if a crime exists at all in light of the facts of this case, it would, at worst, consist of aggravated harassment in the second degree under section 240.30 (1) of the Penal Law, a class A misdemeanor. However, the court does not agree with counsel’s assertion that the crime involved must be, as he puts it, "a truly serious felony” for the application to be granted. First of all, Matter of Abe A. (56 NY2d 288, supra) does not limit the issuance of such orders to cases involving serious felonies. As previously noted, it simply requires that the seriousness of the offense and other factors be weighed "against concern for the suspect’s constitutional right to be free from bodily intrusion” (Matter of Abe A., supra, 56 NY2d, at 291). Second, since the court’s power to issue such an order is derived from its power to issue a search warrant and CPL article 690 which governs the issuance of search warrants does not limit the issuance of warrants to serious or felony cases, it follows that there can be no such limitation on the issuance of the order applied for in the instant case. Consequently, the court is not obligated to deny the application simply because the crime allegedly committed is a misdemeanor.
Turning to the weighing of interests, the court finds as follows: first, that the exemplars sought are crucial to the investigation, particularly in view of the absence of any eyewitnesses; second, that a less intrusive means of obtaining such evidence is not available; third, that the crime allegedly committed is a misdemeanor; fourth, that the providing of handwriting exemplars constitutes a minimal bodily intrusion in contrast to the actual physical intrusion which occurs in the extraction of blood. Although the offense involved in the instant case is less serious than the one in Matter of Abe A. (supra) the intrusion contemplated in the application is also less serious. In conclusion, the court holds that, given the particular circumstances of this case, Mr. Grandinetti’s constitutional right to be free from bodily intrusion is not outweighed by the interest of the People in obtaining the evidence sought in the application.
CPL 70.10 (2) defines the standard of proof applicable to this application as follows: " 'Reasonable cause to believe that a person has committed an offense’ exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense *118 was committed and that such person committed it” (emphasis added). It is important to note that this is a low standard of proof, the function of which is to screen insufficient cases from the criminal process and allow others to proceed and be subjected to more precise examination at more comprehensive stages of the process. Probable cause does not require certitude that a crime has been committed by the suspect. (Brown v City of New York, 92 AD2d 15, affd 60 NY2d 893.)
Applying this standard, the court finds, first of all, that the undisputed facts of this case establish probable cause to believe that the offense of aggravated harassment in the second degree was committed. Specifically, the court holds that the act of writing the note on the newspaper article and affixing the article to the front door of the police station constitutes a communication within the meaning of section 240.30 (1) of the Penal Law; that the act, combined with the threats directed toward the Chiefs niece and nephew contained in the note, gives rise to an inference that the act was performed with the conscious aim or objective of harassing, annoying, threatening or alarming Chief Dolan and that the manner of communication was likely to cause Chief Dolan to become annoyed or alarmed.
In his affirmation in opposition, counsel for Mr. Grandinetti argues that it is improbable "that the newspaper article in question would cause the Chief of Police of the City of Hudson to be harassed, annoyed, threatened or alarmed”, without mentioning the note written on the article which is the very communication at issue. Even if counsel intended to refer to the note the court cannot agree with his conclusion. Although a police officer is expected to tolerate a certain level of hostility and harassment as an occupational hazard, he is also trained to cope with them and to defend himself if the need arises. It is an altogether different situation when threats are directed at members of an officer’s family. It is abundantly obvious to the court that the receipt of such threats can easily be the source of annoyance or alarm.
Further, the court does not regard the fact that Chief Dolan was in Florida at the time the note was affixed to the door as an impediment to the charge. By its own terms, the statute contemplates that the offense can be committed where the communication is made via mail which necessarily involves a lapse of time between the making of the communication and its receipt. It is sufficient that Chief Dolan ultimately received *119 the communication. (See, People ex rel. Lesniak v Mikulski, 146 NYS 829.)
The court also finds that probable cause to believe that Daniel J. Grandinetti committed the offense has been established. Officer Thomas observed Mr. Grandinetti in the area of the police station three times between 9:50 and 10:10 p.m. on May 11, 1988, Jeannine Clegg entered the police station with the newspaper article at 10:10 p.m. and Sergeant Cranna received the telephone call regarding the article at 10:12 p.m. It is therefore beyond question that Mr. Grandinetti was present in the immediate vicinity of the police station during the 20-minute interval when the article was apparently taped to the door. Further, it is clear that the relationship between Mr. Grandinetti and Chief Dolan and the police department is an adversarial one as a result of the charges brought against Mr. Grandinetti in 1987, his acquittal on those charges and the subsequent commencement of a civil action against Dolan, other officers and the City of Hudson. Such a relationship constitutes evidence of a possible motive for committing the acts alleged. Moreover, although not very probative, Mr. Grandinetti fits the general description Sergeant Cranna provided of the person who telephoned him regarding the article.
Counsel argues that these very circumstances make Jay Melino a more logical suspect than Mr. Grandinetti since both were present in the same vehicle, both fit Sergeant Cranna’s description and the Melino family has also had its difficulties with Dolan and the police. In addition, the newspaper article concerned Jay Melino’s father who was convicted of harassment, whereas the article made no mention of Daniel Grandinetti.
If the application contained only the evidence referred to above, the court would agree with counsel’s argument and would be unable to find probable cause with respect to either Daniel Grandinetti or Jay Melino. However, for reasons unknown to the court, the police focused on Mr. Grandinetti, obtained samples of his handwriting and submitted them to the FBI for analysis. The FBI’s findings that there were "significant characteristics in common” when the known samples were compared to the note on the newspaper article, its conclusion that Mr. Grandinetti "must be considered a logical suspect writer” and its recommendation that specific samples be obtained and analyzed in an attempt to establish a positive identification make Mr. Grandinetti the more logical suspect. When considered in conjunction with the other evidence, the *120 court finds that it is reasonably likely that Mr. Grandinetti committed the offense of aggravated harassment in the second degree. In closing, however, the court wishes to emphasize that although the evidence before it establishes probable cause to believe that Mr. Grandinetti committed the offense, it falls short of the standard required for conviction — proof beyond a reasonable doubt. Whether the People can sustain this burden is a question for a jury.
Accordingly, the application is granted and Mr. Grandinetti is hereby required to appear at the Hudson Police Department, Hudson, New York, to submit and provide handwriting exemplars at a date and time mutually agreed upon between counsel for Mr. Grandinetti and the office of the District Attorney but in no event shall the said date be later than 30 days from the date of the receipt of a copy of this opinion, decision and order by counsel for Daniel J. Grandinetti.
The procedure as to providing the said handwriting exemplars shall be as set forth and described in the Federal Bureau of Investigation report dated June 28, 1988.
It is further ordered that the parents and counsel for Daniel J. Grandinetti may be present at the time of obtaining said handwriting exemplars.